person present at the time the statement was given; the date of the statement; the contents of each statement in detail; the name and address of the person who has custody of the statement; the name, address, and occupation of the person who took the statement; if the statement was given under oath.

**ANSWER:** Objection, as to the form and meaning of this Interrogatory. Without waiving said Objections, as I understand the Interrogatory, for any "statements," please see the DOC Medical Record for any letters or statements, my correspondence file for any letters or statements, and my Answer to Interrogatory Number 13, and my Deposition Testimony.

7. Please identify by title, name of author and date of publication all books, articles, treatises, or other learned writings which you intend to introduce at time of trial as part of your defense.

**ANSWER:** None at this time, to be supplemented in accordance with the Rules of Civil Procedure and the Court's Pretrial Order.

8. Identify by name, case number and court, each and every civil and criminal case (including arrests, charges and dispositions) in which the you have ever participated whether as a witness or a party, either as a plaintiff or a defendant, the name of the parties, and state with particularity the substance of the underlying matters and circumstances and the ultimate dispositions if known.

**ANSWER:** Objection, on the grounds that the Interrogatory is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

9. If a lawsuit was filed in regards to any of those claims which are set forth in the interrogatory immediately preceding this one, please identify the name, address, phone number, and claim or policy number of each respective insurer, if any, who insured you against said claim; and the amount of any settlement monies paid.

**ANSWER:** Objection, on the grounds that the Interrogatory is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence

10. With respect to each count filed against you in this action by the Plaintiff, set forth in



EXHIBIT - A

detail all facts which you rely upon in support of your denial that your actions or inactions did not cause or contribute to the injuries or damages alleged by the Plaintiff.

**ANSWER:** In my role as Associate Director of Health Care Services at the DOC, I am not involved in any medical and/or clinical decisions regarding inmate care. My responsibility is to deal with administrative matters as they pertain to the Health Care Services unit. There is a constitutional claim alleging that I violated the Plaintiff's rights. Everything I did was pursuant to, and in my capacity as Associate Director of Medical Services for the Department of Corrections. I did not have any deliberate indifference to Mr. Moreau's known medical needs. Any complaints of plaintiff that were made to me, I promptly responded to in writing. See my Answer Number 13 below. For more details on my involvement with Mr. Moreau, please see my correspondence file and my Deposition Testimony.

11. Describe with sufficient detail all documents referred to or referenced in the preparation of your answers to interrogatories and responses to any requests for production from all parties.

**ANSWER:** The correspondence file that I maintain as Associate Director of Health Care Services, which contains correspondence between myself and inmates who write to me concerning various health care issues. This file has been previously produced in discovery. Also, portions of the plaintiff's DOC medical record. In addition, please see my Deposition Testimony.

12. Provide a privilege log of all documents not provided pursuant to any request for production.

**ANSWER:** None.

13. Please describe the actions, communications, or other services, you performed on behalf of or at the request of the Plaintiff, whether in your individual or official capacity between January 1, 2001 and June 1, 2002, (hereinafter collectively "Services") chronicled by date; and as to each Service fully relate all oral conversations, the contents and identify of each document or written request for medical care you reviewed, and each observation or conclusion you made, if any, as it relates to those Services.

**ANSWER:** As Associate Director of Health Care Services at the Department of Corrections, I maintain a correspondence file on all inmates who forward letters or memos to me concerning a variety of medical issues, including the plaintiff. Please see the correspondence for the exact content. The following is an outline of the correspondence file I maintain on Mr. Moreau:

Mr. Moreau sent a letter dated October 24, 2000 to Dr. Spaulding that was received by her office on October 25, 2000. Dr. Spaulding referred his letter to me for a response, which I

provided on November 15, 2000. In my response, I indicated to Moreau that I had called the Intake Service Center infirmary and spoke to Nurse O'Neil relative to his need for a cat scan. I stated that I learned that he saw a physician on November 3rd and I asked the nurse to place him on a list to see a physician again. I indicated to Moreau that when he met with the physician, to let him know of his condition, and the doctor would decide if it was necessary to send him for a cat scan. I also referred him to Pauline Marcussen relative to his medical documentation request.

On March 7, 2001, I a received a letter from Mr. Moreau regarding a hearing aid and a hearing aid test. On March 14, 2001, I responded to Moreau in writing indicating that he should submit a medical request slip to see a physician, who would have the authority and expertise to render a decision regarding a hearing aid and hearing test.

On March 22, 2001, I received a letter from Mr. Moreau concerning the Department of Corrections co-pay policy relating to a pair of eyeglasses he had obtained on March 22, 2001. I responded to Moreau in writing addressing his concerns and invited him to correspond with me at a later date if needed.

I received a letter from Mr. Moreau dated April 5, 2001 where he complained about medical staff, that he was feeling dizzy at times and that he felt sharp pains in his head. Moreau indicated he was dissatisfied about the staff "not running tests." On April 16, 2001, I responded to Mr. Moreau's letter and indicated that I had spoken to Nurse Abelli at the Intake Service Center Infirmary and that I had asked her to make arrangements for him to see a doctor to go over his blood work results as well as any further symptoms that he was experiencing. I indicated that I expected he would be seen by a physician within a couple of days of my letter.

I received a letter from Mr. Moreau dated September 17, 2001 where he complained of a vision problem and problems with his eye glasses. He asked to see the eye doctor. On September 26, 2001, I responded to Moreau that I spoke to a member of the nursing staff at the Intake Center. I informed Mr. Moreau that he was on the list to see Dr. Smiley at Intake on October 29, 2001. I advised him that if he had further questions to speak to a nurse. Even though Moreau had been transferred to High Security, he was taken back to Intake to see Dr. Smiley on October 29, 2001.

On October 25, 2001, I received a letter from Mr. Moreau dated October 14, 2001, concerning his experiencing poor eyesight and that he was aware of being on a list to see Dr. Smiley on October 29, 2001. He requested Dr. Smiley's address in order for him to correspond with the doctor prior to said appointment. Moreau also stated he was not complaining about my staff or me. In fact, he thinks that I and my staff were doing a good job. On November 5, 2001, I responded to Moreau's letter indicating that I had called Nurse Abelli at the Intake infirmary and learned that he had been transferred to High Security. I made arrangements for him to be transferred to the Intake Center on 10/29/01 for his appointment with Dr. Smiley. I stated my understanding that Moreau saw the doctor on said date, and invited him to contact me again if he had further concerns regarding his eyesight.

I received a letter dated December 5 2001, from Mr. Moreau indicating that he had been experiencing a change in his vision. Moreau requested information as to what the doctor wrote

in a report and his prognosis, and Moreau requested that I research this and get back to him. On December 17, 2001, I responded to Moreau indicating that he had gone to the Rhode Island Hospital Eye Clinic on November 16, 2001 where he was referred to the Neurology Clinic. Also, gave him directions as to obtaining copies of his medical reports.

On November 29 2001, I wrote to Moreau relative to a letter he had sent to Dr. Allen dated November 27, 2001. In my letter to Moreau, I indicated that he had been seen by Drs. Smiley and Figueroa and that it was recommended that he be seen by a neurologist. I advised that he had been approved for an appointment at the Rhode Island Hospital Neurology Clinic, and that if he had any medical concerns in the meantime, for him to submit a request slip to see his treating physician or speak to a member of the medical team in his facility.

Mr. Moreau wrote a letter to me dated January 29, 2002 regarding he wanting a copy of his Rhode Island Hospital records. On February 19, 2002, I responded to Moreau in writing indicating that he had previously requested his record from Rhode Island Hospital, but was unwilling to pay the required retrieval fee of $24.57. I suggested that he pay the fee in order to receive the information.

14. On the date(s) that you performed Services please indicate respectively to what degree you were cognizant of the Plaintiff's hydrocephalous condition, including, without limitation and by way of example and not quantification, requests for examination; appointment and message books; the manner and mode and method by which you were cognizant; a time chronicle of the time, times, day or dates you were so cognizant; and a description of any other document you had knowledge of regarding this topic.

**ANSWER:** Objection, irrelevant and not reasonably calculated to lead Plaintiff to the discovery of admissible evidence. Without waiving said Objections, please be advised that in my role as Associate Director of Health Care Services at the DOC. I do not provide medical and/or clinical "services" and I am not involved in any medical and/or clinical decisions regarding inmate care. My responsibility is to deal with administrative matters as they pertain to the Health Care Services unit.

15. Prior to providing Services to the Plaintiff, detail all medical or other training, education, documentation and other information you received or reviewed regarding the underlying condition commonly referred to as hydrocephalous, including, without limitation and by way of example and not quantification, the date of said training or education or information or documentation received; the name of the institution providing the same; the name(s) of the individual(s) providing the same; a description of any diplomas, certificates, awards, notations, etc. received by yourself (if any) upon your completing any of such training or education; any Plaintiff specific medical records, charts, you reviewed; any and all other information.