by a specialist, diagnosis and/or hospitalization, regardless of whether you opine that such action was warranted; and indicate the manner in which you were able to initiate such emergency action.

**ANSWER:** I had the ability to initiate emergency medical care whose life may be in jeopardy. A rescue transports to outside medical vendors and I could arrange this through the authority of the shift commander. I received furlough forms from doctors. I would fill in the blanks that the doctor leaves open and sign the furlough form. I place a copy of the furlough in the patient's chart. I forward the furlough to the person who contacts the clinic and makes the actual appointment. An inmate can also submit a medical request slip to a correctional officer or nurse, which would end up in the dispensary, where I would review them and forward to the doctor, who on most occasions would see inmates on the day that the slips were reviewed.

18. Please detail the standard operating procedure you customarily followed in the scheduling and actual rendering of medical care to persons similarly situated as the Plaintiff in the Fall of 2001; and indicate the extent to which, if at all, the actual scheduling utilized or services rendered to the Plaintiff in the Fall of 2001 deviated from the custom stated in this response, and the reasons why. Your answer should include, without limitation and by way of example and not quantification, a full discussion of the handling and/or processing and care, custody, and control of documents submitted by patients or potential patients, i.e. the plaintiff, requesting medical care, and the manner in which the appropriate medical care provider is scheduled to address the request.

**ANSWER:** See my Answer to Interrogatory Number 18. In addition, inmates can submit medical request slips to a correctional officer or nurse which would be delivered to the dispensary where I would review them and forward to the doctor who would see the inmate usually on the same day the slip was submitted. Also, please see my Deposition Testimony.

19. Described in detail your medical diagnosis of the Plaintiff subsequent to and as a result of the services you provided to the Plaintiff in the Fall of 2001, and set forth every fact upon which you predicted that diagnosis.

**ANSWER:** Pursuant to my education and training, I am not qualified to make a medical diagnosis.

20. Please provide in chronological detail the history of your professional or other relationship with any co-defendant as it pertains to professional services you rendered to patients at the correctional facility that housed the Plaintiff. Detail all terms of the relationship including, without limitation and by way of example and not quantification, the job description, remuneration, hours of services, limitations or controls or procedures influencing your professional services, and the manner in which any limitation or control or procedure deviated from your that same type of service provided to patients not housed within a correctional facility.

**ANSWER:** I do not have day-to-day dealings with Defendants Joseph Marocco, nor James



EXHIBIT - C