noticed their vision was getting progressively worse over a short period of days on the medical request slip, what time frame would you have acted under as a desk nurse?
MR. PALOMBO: Objection. You can answer.
MS. RAND: Objection.
MR. TATE: I object.
A. I don't know how to answer that. If an inmate says to me, my vision is bad or something of that nature, we file it with the ones to be seen by Dr. Smiley. The fact that an inmate -- and I had inmates who will say, I have a headache, and the next day he put in another one, I have a headache, and the next day he puts in another one, I have a headache. That's three slips for the doctor to go through for the same problem. The inmate that tells me I'm having trouble seeing could be taken in the same way.
Q. So are you suggesting that based upon the information written on the slip you would form an assessment whether it required you to act in an emergency fashion as opposed to simply waiting for the doctor to review the slip with you?
MR. PALOMBO: Objection. You can answer.



MS. RAND: Objection.
A. It depends on what he puts on the slip.
MR. TATE: I didn't hear the answer.
A. It depends on what he put on the slip.
Q. It would be entirely up to the desk nurse to make a judgment call? Is that how it works?
MR. PALOMBO: Objection.
MS. RAND: Objection.
MR. PALOMBO: You can answer.
A. As I recall, the slips that came in by Mr. Moreau were forwarded not just to Dr. Smiley but on to the medical doctor.
Q. Okay. So as it pertains to Mr. Moreau, you have recollection of slips coming in from him?
MR. PALOMBO: Objection. You can answer. Those questions were hypothetical. You can answer his question.
A. Yes.
Q. Okay. What time frame do you recall Mr. Moreau's medical slips coming in?
A. I don't recall.
MR. TATE: I didn't hear the answer. I'm sorry.
A. I don't recall.
Q. Are you saying that you have, just to be clear on one



of the responses you gave, are you suggesting that you have your own specific recollection that Mr. Moreau did in fact submit at least one or more slips because you handled it yourself?
MS. RAND: Objection.
MR. PALOMBO: Objection. You can answer.
A. Mr. Moreau put in one or more slips. Evidently I was concerned enough to handle it with the medical doctor, not just by waiting for Dr. Smiley, because Mr. Moreau was sent to Intake for the initial exam by Dr. Smiley, not waiting for him to come two months later to High Security.
Q. Okay. And now, the question I'm asking because of that testimony is how do you know that he put in one or more slips?
MR. PALOMBO: Objection.
Q. Is it because you handled the slip or is it because somebody told you that he submitted a slip?
MR. PALOMBO: Objection. You can answer.
A. I don't know. I'm sure that I've been told in the process of this deposition that he handed in slips. Plural.
MR. PALOMBO: I move to strike.



Q. Okay. So you're not testifying based upon your own firsthand recollection that he in fact submitted a slip through yourself; is that correct?
A. That's correct.
Q. Okay. You're only testifying based upon general information that's been disclosed or made available to you through the course of your own deposition; is that correct?
MR. PALOMBO: I object. You can answer.
A. Yes.
Q. Okay. And is it fair to say with 100 percent certainty that you would not have processed as a desk nurse any of Mr. Moreau's medical request slips if at all at any date prior to October 29, 2001?
MR. PALOMBO: I object, but you can answer.
A. No. I think I'm saying no. Ask me that again.
MR. DIMAIO: All right. I'll have it read back.
(LAST QUESTION READ BACK)
A. Well, that's a long way around a question. I'm not sure, but I think I'm saying -- I can't say a hundred percent certainly, no. Medical request slips came to me. I process them. Whether before



EXHIBIT - D