**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| RICHARD MOREAU<br><br>VS.<br><br>STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, ASHBEL T. WALL, DIRECTOR, JAMES WEEDEN, WARDEN, JOSEPH MAROCCO, ASSOCIATE DIRECTOR OF HEALTH CARE, SCOTT ALLEN, MD, DR. SMILEY, BARBARA A. CARROLL, RN, MARYLYN GREJUDUS, RN, JOHN DOE (1), JOHN DOE (2), JOHN DOE (3) | C.A. No: 04-459S |

**PLAINTIFF'S, OBJECTION TO**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**NOW** comes the Plaintiff, Richard Moreau, and objects to the Motion for Judgment on the Pleadings of the defendants, A.T. Wall, James Weeden, Joseph Marocco, Barbara Carroll and Marilyn Hale (formerly, Grejudus), ("State" or "Defendants"). In further support of said objection, Plaintiff incorporates by reference herein Plaitiff's Memorandum of Law.

**WHEREFORE**, Plaintiff requests Defendant's Motion be denied.

Plaintiff,
By Counsel,

Joseph Anthony DiMaio, Esq.
Attorney #3910
Mckinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655

**CERTIFICATION**

I hereby certify that a true copy of the within Objection was faxed and mailed to **Thomas A. Palombo Esq.**, 150 South Main Street, Providence, RI 02903, on the 7th day of July, 2006.

______________________

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RICHARD MOREAU | ) | |
| | ) | |
| VS. | ) | C.A. No: 04-459S |
| | ) | |
| STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, ASHBEL T. WALL, DIRECTOR, JAMES WEEDEN, WARDEN, JOSEPH MAROCCO, ASSOCIATE DIRECTOR OF HEALTH CARE, SCOTT ALLEN, MD, DR. SMILEY, BARBARA A. CARROLL, RN, MARYLYN GREJUDUS, RN, JOHN DOE (1), JOHN DOE (2), JOHN DOE (3) | ) | |

**PLAINTIFF'S, MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

**NOW** comes the Plaintiff, Richard Moreau, and in support of his objection to the Motion for Judgment on the Pleadings of the defendants, A.T. Wall, James Weeden, Joseph Marocco, Barbara Carroll and Marilyn Hale (formerly, Grejudus), ("State" or "Defendants"), states as follows:

**FACTS:**

Plaintiff's First Amended Complaint ("Cpt.") alleges three counts. Count II "Violation of Open Records Statute" is the focus of the State's motion. The State admits that "written medical requests are destroyed after a medical request is handled by the medical staff." See Answer, ¶45.

Defendant's Memorandum of Law in Support of Motion for Judgment on the Pleadings ("DM") states that as a matter of State law, the medical request slips "are not public records, because they are patient medical records" (See DM p. 2). Defendant also states in their memorandum that the slips are "internal DOC documents used by medical staff" (See DM p. 2). Plaintiff proffers that the latter statement is not supported by the pleadings and must refer to some matter outside the pleadings of which Plaintiff is unaware.

While Plaintiff will agree and stipulate that a medical request slip is part of the Plaintiff's medical record. Plaintiff denies that a medical request slip or a medical record, is an "internal DOC

document used by medical staff" (DM p.2). Plaintiff attaches hereto and incorporates by reference herein Exhibit A, a true and accurate copy of an exemplar medical request slip. There has been substantial testimony regarding the formation, use, and handling of the medical request slip. Its very two-way communication, multi-part, design rebuts the Defendants' claim of internal document. Also, Exhibit B, copy pre-suit correspondence dated August 6, 2004 DOC, attached hereto and made incorporated by reference herein, also rebuts the Defendants' claim since the DOC considers Mr. Moreau's medical record "public information" albeit not accessible by all members of the general public at large.

It is absolutely incredible that the State would go through the pain of memorializing in triplicate a form that was designed to be destroyed from inception. Clearly the Administrator is not performing a triage function, and therefore that copy should be forever retained. The design of the slip speaks for itself as to its intended use and retention.

**LAW:**

**Federal Rules of Civil Procedure:**

"All pleadings shall be so construed as to do substantial justice" USCS Fed. Rules Civ. Proc. R. 8(f). Pleadings may adopt other paragraphs by reference "...in a different part of the same pleading or in another pleading or in any motion..." USCS Fed Rules Civ Proc R 10. A motion for judgment on the pleadings is made "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." USCS Fed Rules Civ. Proc. R. 12.

**Rhode Island General Laws ("R.I.G.L."):**

Chapter 1 of Title 38 is entitled "CUSTODY AND PROTECTION" see R.I.G.L. §38-1 et. seq. Chapter 1 defines a public record as "all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, or other material regardless of physical form or characteristics made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency. R.I. Gen. Laws § 38-1-1.1(c).

Chapter 2 of Title 38 is entitled "ACCESS TO PUBLIC RECORDS" see R.I.G.L. §38-2 et. seq. The Chapter 2 definition, of a public record defines a medical record as not a public record "[f]or the purposes of **this** chapter..." (emphasis supplied) see R.I.G.L. R.I.G.L. §38-2-2(4)(i)(A)(I). contra R.I.G.L. §38-1 et. seq. The operative language in Chapter 2 reads "the following records shall not be deemed public:

> ...(A)(I) All records which are identifiable to an individual applicant for benefits, client, patient, student, or employee, including, but not limited to, personnel, medical treatment, welfare, employment security, pupil records, all records relating to a client/attorney relationship and to a doctor/patient relationship, and all personal or medical information relating to an individual in any files, including information relating to medical or psychological facts. R.I.G.L. §38-2-2(4)(i)(A)(I)

Chapter 3 of Title 38 is entitled "PUBLIC RECORDS ADMINISTRATION". see R.I.G.L. 38-3 et. seq. The Chapter 3 definition of a public record states "38-3-2(5) is identical to the Chapter 1 definition, and contains no exemptions as found in Chapter 2.

Penalties for failure to comply with the custody and protection provisions of Title 38, are found within Chapter 1. They are R.I.G.L. § 38-1-2 "Delivery of records to lawful custodian" Id. and R.I.G.L. § 38-1-4. "Keeping of records in vaults provided -- Penalty ". The later is a better fit for the allegations plead in plaintiff's complaint, It provides in relevant part that "[w]hoever unlawfully keeps in his or her possession any public record, or... alters, defaces, mutilates, or destroys any public record, or violates any provision of this section, shall, for each offense, be punished by a fine of not less than twenty dollars ($20.00) nor more than five hundred dollars ($500)" Id.

While not specifically plead, since the issues are closely intertwined, it is helpful to review statutes regarding records retention for nursing. R.I.G.L. § 5-34-24 provides "Grounds for discipline of licensees, The board of nurse registration and nursing education has the power to deny, revoke, or suspend any license to practice nursing; to provide for a non-disciplinary alternative only in situations involving alcohol or drug abuse or to discipline a licensee upon proof that the person is:...(6) Guilty of unprofessional conduct which includes, but is not limited to... (iii) Willful omission to file or record nursing records and reports required by law;" R.I. Gen. Laws § 5-34-24(6)(iii).

Regarding records retention in the practice of medicine and/or medical licensure, R.I.G.L. §5-37-5.1 provides, "Unprofessional conduct, The term "unprofessional conduct" as used in this

chapter includes, but is not limited to, the following items or any combination of these items and may be further defined by regulations established by the board with the prior approval of the director:... (9) Willfully omitting to file or **record,** or willfully impeding or obstructing a filing or recording, or inducing another person to omit to file or **record, medical** or other reports as required by law;" R.I. Gen. Laws § 5-37-5.1(9)

Enabling a cause of action for statutory offenses and crimes resulting in personal injury, R.I.G.L.§9-1-2 provides: "Civil liability for crimes and offenses -Whenever any person shall suffer any injury to his or her person, reputation, or estate by reason of the commission of any crime or offense, he or she may recover his or her damages for the injury in a civil action against the offender, and it shall not be any defense to such action that no criminal complaint for the crime or offense has been made; and whenever any person shall be guilty of larceny, he or she shall be liable to the owner of the money or articles taken for twice the value thereof, unless the money or articles are restored, and for the value thereof in case of restoration." R.I. Gen. Laws § 9-1-2.

To the extent each Defendant is named individually and was not subject to a motion for certification and substitution[1] under Count II for their intentional conduct, individual liability is preserved under R.I.G.L. § 9-31-12(b) which provides that "[u]pon certification by the court in which the tort action against a state employee is pending that (1) the defendant employee was acting within the scope of his or her office or employment when the claim arose, and (2) the claim does not arise out of actual fraud, willful misconduct, or actual malice by the employee" (emphasis added) R.I.G.L. § 9-31-12.

**Case Law:**

"A court may grant a motion for judgment on the pleadings pursuant to Rule 12(c) **when no genuine issues of material fact exist** and the moving party is entitled to judgment as a matter of law. Lovell v. One Bancorp, 690 F. Supp. 1090, 1096 (D. Me. 1988) (citing Beal v. Missouri Pacific Railroad Corp., 312 U.S. 45, 51, 85 L. Ed. 577 , 61 S. Ct. 418 (1941)), appeal dismissed, 878 F.2d 10 (1st Cir. 1989)" (emphasis supplied). Pacheco v. Raytheon Co., 777 F. Supp. 1089, 1090-1091 (D.R.I. 1991).

1 Plaintiff refers to this Court's recent decision granting Defendant's respective Motions for Certification and Substitution as to Count I, however clearly establishing that is was restricted only to Count I due to the different or additional allegations contained in the remainder of Plaintiff's complaint.

"The factual allegations in the complaint must be taken as true, and the legal [*1091] claims assessed in the light most favorable to plaintiff. To render judgment on the pleadings, the court must be certain that plaintiff is entitled to no relief under any set of facts that could be proved in support of his claim." Pacheco v. Raytheon Co., 777 F. Supp. 1089, 1090-1091 (D.R.I. 1991).

Under Haley v. Lincoln a rule 12(c) motion for judgment on the pleadings "provides a trial court with the means of disposing of a case early in the litigation process when the material facts are not in dispute..." Haley v. Lincoln, 611 A.2d 845, 847-848 (R.I. 1992). Further,

> "[t]he standard to be applied by the court in determining whether to grant a Rule 12(c) motion is a restrictive one. The court is to view the alleged facts presented in the pleadings in the manner most favorable to the nonmoving party. The factual allegations contained in the nonmovant's pleadings are admitted as true for purposes of the motion. All proper inferences to be derived from the pleadings are to be drawn in favor of the nonmovant. In this fashion the court considering a Rule 12(c) motion ensures that the rights of the nonmovant are adjudicated as fully as if there had been a trial. Accordingly a defendant may not prevail on a Rule 12(c) motion unless that defendant is able to demonstrate to a certainty that the plaintiff will not be entitled to relief under any set of facts that might be proved at trial. Conversely, a plaintiff may not secure a judgment on the pleadings unless the defendant admits the allegations advanced in the complaint and sets forth no affirmative matter constituting a legal defense." (citations omitted) Haley v. Lincoln, 611 A.2d 845, 847-848 (R.I. 1992)

"Evidence of a knowing violation [of statute] is admissible to support other claims..." Bitting v. Gray, 897 A.2d 25, 36 (R.I. 2006).

**ARGUMENT:**

Plaintiff argues his claims against each defendant, in their individual and official capacity, is sustainable either by virtue of R.I.G.L.§9-1-2 or by virtue of Count II's incorporation of the Count I negligence allegations combined with statutory requirements to retain records, or both.

Violation of the Public Records[2] laws, Title 38, gives rise to a private cause of action though R.I.G.L.§9-1-2.

2 It should be noted that Defendant's Memorandum and Plaintiff's complaint misidentifies Title 38 as an "Open Record" statute. (DM p.38; Cpt. p.6). However while both make direct reference to Title 38 of the Rhode Island General Laws, which is entitled **"PUBLIC RECORDS"** not "Open Records"

Dispelling any question whether a private cause of action exist for violation of the Public Records statues, R.I.G.L. § 9-1-2 makes it clear that if a person suffers an "**injury** to his or her **person**, reputation, or estate **by reason of the commission of any** crime or **offense, he or she may recover his or her damages for the injury in a civil action against the offender, and it shall not be any defense to such action that no criminal complaint for the crime or offense has been made**..." (emphasis supplied) R.I. Gen. Laws § 9-1-2. Plaintiff has alleged just such a causal nexus via incorporation of paragraphs 1 – 40 within Count II (see Cpt. ¶41); (see also Cpt. ¶23, Cpt. ¶31, Cpt. ¶36, Cpt. 37, Cpt. ¶32, Cpt. ¶39, Cpt. ¶40).

Chapter 1 of Title 38 makes it absolutely clear that "**[w]hoever... destroys any public record**, or violates any provision of this section, shall, for each **offense**, be punished by a fine of not less than twenty dollars ($ 20.00) nor more than five hundred dollars ($500) R.I. Gen. Laws § 38-1-4. This statute describes the prohibited act as an "offense" Id. R.I.G.L.§9-1-2 applies to crimes and offenses causing injury to person. The intentional destruction of the medical request slip is a significant contributing factor to the Plaintiffs injuries because Plaintiff went blind due to the delay in appropriate medical treatment which have been more timely or more appropriate had they not been destroyed prior to medical action. Thus the prayer for relief for "COMPENSATORY and STATUTORY DAMAGES" at the end of Count II (see Cpt. Count II) are necessarily intertwined since the concept of a statutory recovery permitted under these circumstances result only in compensatory damages under R.I.G.L. 9-1-2 supra.

The Defendants argument that a medical request slip is not a public record as a matter of State law is incorrect. Under Chapter 1 of Title 38, public records are any and all "...documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, or other material regardless of physical form or characteristics **made or received pursuant to law** or ordinance or in connection with the transaction of official business by any agency." (emphasis supplied) R.I.G.L.§38-1-1.1(c). This interpretation is consistent with other statutes requiring the retention of medical records (see R.I.G.L. §38-1-2; R.I.G.L. §38-1-1.1(c); R.I.G.L. §38-1-4; R.I.G.L. §5-34-24; and §5-37-5.1; and any similar Federal Statutes[3]). Chapter 1 contains no exemption for medical records contra R.I.G.L. §38-2-2(4)(i)(A)(I).

By virtue of statutory construction, had legislature intended to exclude medical records from the care and custody protections found in either Chapter 1 or Chapter 3 of Title 38, then it would

3 At the time of research and writing of this memorandum, an exhaustive search and analysis of applicable Federal Statutes dictating retention of medical records had not been completed.

have included language as it did in Chapter 2. Thus medical records are conclusively included within the protections of Chapter 1 and Chapter 3 and must be protected consistent with those laws. Plaintiff submits that even if medical request slips were internal DOC documents, they too must be retained under Title 38 as are all other internal DOC documents known to exist by virtue of discovery in this case.

Chapter 2 of Title 38 is not relevant to Plaintiff's complaint. Plaintiff did not allege he was denied access to his own record or any other record as a member of the general public or any other public body. His written requests for medical attention were destroyed, disregarded, and not acted upon. Plaintiff claims he went blind because this conduct, destruction of the medical record, the medical request slip, was a contributing proximate cause of his blindness

As a matter of common sense, if medical records received by the DOC from inmates were not public records subject to records retention, then the State would not warehouse thousands of medical records for all other persons serving a period of incarceration. The duty to preserve and protect records is clearly established by Chapter 1 of Title 38 entitled "Custody and Protection". Title 38 is a more appropriate statute than those cited supra with respect to nursing and the practice of medicine, since the plaintiff's complaint may fairly be construed as one complaining of the failure to provide medical services. While the other medically specific record retention statutes supra are equally valuable and may also apply, since each individual defendant was acting within the scope of their employment for a State Agency, the Department of Corrections ("DOC") it is probably more appropriate for this reason as well.

The argument that the medical request slip is for internal DOC use only is equally misplaced. First it is not based on the pleadings, and secondly any conjecture that it is an internal DOC document is inconsistent with its actual use as a vehicle for an inmate to communicate the details of his health related problem. As its descriptive name implies, it is a medical request slip that originates from the patient, it is illogical to argue that it is an internal DOC document. Even if it were, the Title 38 contains no exemption to the care and custody requirements of Chapter 1 for such "internal" documents. Moreover, review of the slip indicates that by design all three-parts are designed to originate from the patient, and then the pink part is returned to the patient with some type of DOC medically relevant response. For that reason the claim of "internal" DOC document also fails.

While it may be a private function to retain "medical records" as is customary for health care providers of all kind and discipline, it is still required that they "be **kept**" (emphasis supplied) (DM

p. 2), albeit confidential by federal and state law. (see generally R.I.G.L.§38-2-2(4)(i)(S). Whether based in the public records retention statutes or overlapping private proprietary functions statutes regarding medical services, supra, it appears R.I.G.L.§9-1-2 provides for a cause of action in either event arising out of an offense for not complying with a statute that imposes a punishment tantamount to a "crime or offense" Id. As long as Plaintiff causally connects his damages to the destruction of the records, which is presumed for Rule 12(c) purposes, " Pacheco v. Raytheon Co., 777 F. Supp. 1089, 1090-1091 (D.R.I. 1991), Haley v. Lincoln, 611 A.2d 845, 847-848 (R.I. 1992), Plaintiff's pleading is sustainable.

The person with paramount standing to complaint regarding the preservation of a medical record received within the ordinary conduct of an agency activity would is the patient, Plaintiff. The general public has no standing to vindicate the Plaintiff's right to have his medical record retained when received in the course of the Department of Corrections conducting their official business. Therefore the duty imposed on that Agency, the DOC, must necessarily run in favor of the party with standing; the party which stands in harms way, in this case the Plaintiff. The risk of harm from the failure to retain those records is a delay sufficient to cause a serious medical problem, which did occur for the Plaintiff resulting in his permanent blindness.

Count II is a claim of negligence sustainable against each Defendant in their individual capacities and official capacities.

Rule 10(c) of the Federal Rules of Civil Procedure permits incorporation by reference. Count II of Plaintiff's Complaint reincorporates by reference all prior allegations of fact see Cpt. ¶41. Count I of Plaintiff's Complaint is in essence one for negligence See generally Cpt. Count I ¶1 - ¶40. Directly under "Count II" of Plaintiff's Complaint Plaintiff recites as the core concept underlying this separate causal nexus or transaction as "Violation of Open Records" See Cpt. Count II. The prayer for relief in Count II seeks "Compensatory and Punitive Damages" see Cpt. Count II. Thus Count II essentially adds the component of destruction of records to a negligence complaint, and also seeks the imposition of "statutory damages".

Pleadings are construed to perform substantial justice USCS Fed. Rules Civ. Proc. R.I.G.L. 8(f). Assuming all facts all facts in favor of the Plaintiff so as to ensure "that the rights of the nonmovant are adjudicated as fully as if there had been a trial" supra Haley then in review of this motion this court would assume that the medical slips, admitted by the Defendants as "medical records" supra are subject to a duty of preservation or protection. Since Count II

incorporates the negligence theories, and alleges the knowing violations of statutes, a fair reading of Count II in light of the prayer for compensatory damages, is to construe it as one for negligence that is not subject R.I.G.L.§9-31-12 certification and substitution infra. This interpretation is consistent with this Courts earlier ruling with respect to Count I. Thus only the prayer for statutory damages would potentially fails, if at all.

Since the state is not arguing that there are no set of facts which would make Count I, the negligence claims, sustainable they cannot possibly meet the requirements for dismissal under Rule 12(c) of those same negligence allegations which are incorporated in Count II by reference. The requirements for dismissal under Rule 12(c) are detailed extensively in Haley v. Lincoln, 611 A.2d 845, 847-848 (R.I. 1992), and Pacheco v. Raytheon Co., 777 F. Supp. 1089, 1090-1091 (D.R.I. 1991) Supra. On this analysis, Plaintiff's count is sustainable.

Defendant's memorandum states that the medical slip is a medical record (DM p.2) In the face of prevailing law directing that a medical record must be preserved and protected (see R.I.G.L. §38-1-2; R.I.G.L. §38-1-1.1(c); R.I.G.L. §38-1-4; R.I.G.L. §5-34-24; and §5-37-5.1; and similar statutes imposing requirements on the medical community to retain certain records i.e.) or "kept" (DM p.2), this type of conduct, intentional destruction of a medical record, fails to satisfy the second prong of R.I.G.L.§9-31-12(b) supra. It fails because arguably it is either an act of fraud to obscure the critical initial onset of the Plaintiff's symptoms and complaints, or willful misconduct in failing to comply with a direct statutory requirement allowing for no discretion or choice or exercise of professional judgment, or actual malice by the employee to delay medical treatment. Thus, each defendant is potentially liable individually, unprotected by the State Tort claim cap (see generally R.I.G.L. §9-31-2).

It would be a travesty of justice to permit the intentional and willful destruction of medically relevant documents which causally trigger the timely and prompt treatment of serious medical needs. By its very description, a "medical request slip", is the single most probative time record of the onset and nature and characteristics of an inmate's symptoms necessary to the proper triage of a prisoner-patients. The significance of the medical request slip as a "medical record" (DM p. 2) thus highlights and inflames the Plaintiff's complaint and is a significant contributing factor proximately causing the Plaintiff's injuries. Permitting the intentional destruction of the medical record to pass without some consequence is against the public policies set forth in Mead v. Papa Razzi, 2006 R.I. LEXIS 92 (R.I. 2006) ("Mead II").

Plaintiff's Count II is also sustainable as against each named individually named defendant. Chapter 1 of Title 38, the care and custody provisions of the public records statutes, is not restricted to just state actors, but is applicable to "**Every person** other than the lawful custodian[4] thereof, who shall have in his or her possession, or under his or her control, any such record, book, writing, letter, or document as is designated in § 38-1-1..." (emphasis supplied) R.I.G.L.§38-1-2. Likewise, "**[w]hoever**... destroys any public record, or violates any provision of this section shall, for each offense, be punished by a fine of not less than twenty dollars ($ 20.00) nor more than five hundred dollars ($500).." (emphasis supplied) R.I.G.L. 38-1-4. It the face of this clear punitive statute the Defendants sued in their individual and official capacities arguably committed willful misconduct or worse.

When reviewed against the context of their employ, law of the case has already established that each individual Defendant was "acting within the scope of their employment" under prong one of R.I.G.L.§9-31-12(b)[5]. While it is not clear whether Chapter 1 of Title 38 of the Rhode Island General Laws is entitled "Custody and Protection" applies equally to private citizens as well as state actors acting within the scope of their employ, that issue is no longer germane to this controversy[6]. All current Defendants were acting within the scope of their employment, however may be equally liable both in their individual capacity and official capacity.

The Department of Corrections, meets the definition of "Agency" under R.I.G.L. §38-1-1.1(a), in reality each individually named defendant, in their official capacity, constitutes the Agency. As the embodiment of an Agency they must share responsibility to ensure the proper functioning of that Agency and compliance with the public records retention statutes under Rhode Island General Law, Title 38. Since Title 38 imposes clear obligations on an Agency as well as "every person" supra the "whoever" supra employer embodied by each defendant in their official capacity is potentially liable.

**CONCLUSION:**

If it was not for the facts actually alleged by the Plaintiff in this suit, it may be difficult to imagine how the destruction of a public record subject to a specific statute could cause personal injury. However in reality that is not so far fetched when those documents are medically related.

4 None of the defendants sued were alleged to be the custodian of Plaintiff's medical record, a public record under R.I.G.L.§38-1-1.1 and are therefore not exempt.

5 Id. FN 1

6 Id. FN5

The most obvious effect of destruction of medical records is that it will delay treatment of a patient in potentially perilous circumstances. Such was the case for the Plaintiff. Just as dramatic as dire as a truncated telephone call for emergency rescue, was the medical request slip to a person serving a term of incarceration, the Plaintiff. The initial call for medical help, the medical request slip, are probative of the notice and opportunity elements in a negligence analysis. Intentional injury to that cause of action must be vindicated in some manner.

In light of such a clear legislative intent to punish the destruction of a public record (see R.I.G.L. §38-1-4; see also R.I.G.L. §38-1-2), and the statutorily proscribed remedy of Compensatory damages pursuant to R.I.G.L. 9-1-2, and consistent with need to encourage the retention of potentially damaging information as enunciated in Mead II, Plaintiff's Count II states a cause of action assuming all allegations in his favor. For the above reasons, Defendant's Motion should be denied.

Plaintiff,
By Counsel,

Joseph Anthony DiMaio, Esq.
Attorney #3910
Mckinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655

**CERTIFICATION**

I hereby certify that a true copy of the within Objection was mailed to **Thomas A. Palombo Esq.**, 150 South Main Street, Providence, RI 02903, on the 7th day of July, 2006.