**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RICHARD MOREAU<br><br>VS.<br><br>STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, ASHBEL T. WALL, DIRECTOR, JAMES WEEDEN, WARDEN, JOSEPH MAROCCO, ASSOCIATE DIRECTOR OF HEALTH CARE, SCOTT ALLEN, MD, DR. SMILEY, BARBARA A. CARROLL, RN, MARYLYN GREJUDUS, RN, JOHN DOE (1), JOHN DOE (2), JOHN DOE (3) | ) | C.A. No: 04-459S |

# PLAINTIFF'S RULE 37 MOTION TO STRIKE DEFENDANTS' EXPERT DISCLOSURE AND TO PRECLUDE TESTIMONY

**NOW** comes the Plaintiff, Richard Moreau, and moves this Honorable Court grant an order striking the Defendants' expert disclosure and further precluding the Defendants from providing testimony or otherwise as this court shall deem fair and just. In further support of said motion, Plaintiff incorporates by reference herein Plaintiff's Memorandum of Law.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court grant his motion.

Plaintiff,
By Counsel,

Joseph-Anthony DiMaio, Esq.
Attorney #3910
Mckinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655
(401) 722-9160 (fax)

**CERTIFICATION**

I hereby certify that a true copy of the within was mailed to **Thomas A. Palombo Esq.**, 150 South Main Street, Providence, RI 02903, on the 17th day of July, 2006.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RICHARD MOREAU | ) | |
| | ) | |
| VS. | ) | C.A. No: 04-459S |
| | ) | |
| STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, ASHBEL T. WALL, DIRECTOR, JAMES WEEDEN, WARDEN, JOSEPH MAROCCO, ASSOCIATE DIRECTOR OF HEALTH CARE, SCOTT ALLEN, MD, DR. SMILEY, BARBARA A. CARROLL, RN, MARYLYN GREJUDUS, RN, JOHN DOE (1), JOHN DOE (2), JOHN DOE (3) | ) | |

**PLAINTIFF'S, MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RULE 37 MOTION TO STRIKE DEFENDANTS' EXPERT DISCLOSURE AND TO PRECLUDE TESTIMONY**

**NOW** comes the Plaintiff, Richard Moreau, and in support of his Motion To strike Defendants' Expert Disclosure and to Preclude Testimony states as follows:

**FACTS:**

1. Subsequent to Plaintiff's timely expert disclosure, Defendants faxed and mailed their disclosure on Wednesday, June 14, 2006 (Exhibit A)[1].
2. Defendants' discovery was due on Wednesday, June 14, 2006.
3. Immediately after reviewing Defendants faxed disclosure on June 14, 2006, Plaintiff's counsel communicated with Defense counsel by way of phone message and phone conversation, conveying concerns that the disclosure did not comply with the Federal Court Rules of Civil Procedure (see generally Exhibit B). Defense

[1] Only the relevant portion of this exhibit is included with this memorandum.

counsel did then fax and mail a confirmatory letter regarding the conversation and his position. (Id.)

4. On June 15, 2006, Plaintiff's counsel authored a letter offering to elaborate concerns related to Defendants' failure to include a report from their disclosed expert(s) (see Exhibit C).

5. After communicating by phone again on Tuesday, June 20, 2006, Plaintiffs counsel authored another letter indicating that Defendant's disclosure still needed to be cured (Exhibit D); that Defendants' omission is substantive and not merely procedural (Id.); and that Plaintiff was also seeking some type of proffer (Id).

6. In lieu of a proffer, Defendant provided a supplemental compliance on June 23, 2006 (Exhibit E).

7. Both the initial disclosure, Exhibit A, and the amended disclosure, Exhibit E, present expert disclosures regarding two different experts in a single integrated document which does not differentiate opinions of either respective expert or the respective facts upon which their respective opinions are based ("Amalgam").

8. On Wednesday, June 28, 2006, Plaintiff's counsel authored a letter confirming a conversation between counsel regarding Defendants' compliance, indicating that substantive concerns still remained, and further indicating an intent to complete opposition to Defendants' then pending motions[2] (Exhibit F).

9. More than one month has passed after the Defendants deadline for making a proper expert disclosure. Plaintiff is unaware of any motion for relief requesting an extension to further supplement Defendants' expert disclosure beyond the anticipated June 23, 2006 submission, and represents that no such further request has been requested either through correspondence or verbally. No further cure is anticipated.

10. Expert discovery presently closes on Thursday, July 27, 2006.

---

[2] Referring to Defendants Wall and Weeden's Motion for Summary Judgment and Defendants' Motion for Judgment on the Pleadings see Exhibit B (filed contemporaneous with the June 14, 2006 cover letter). By stating this intent, Plaintiff also thereby provided Defendants with the courtesy of time within which to formulate their strategy regarding relief from their admitted non compliance (Exhibit B) regarding to a cure.

11. Plaintiff provided his expert disclosure on May 10, 2006 (see Exhibit G) and initially disclosed Dr. Hedges as Plaintiff's expert on July 13 2005 by providing an in initial report with Plaintiff's voluntary disclosures.

12. Plaintiff certifies that counsel has conferred with opposing counsel in an attempt to resolve issues regarding Defendant's non-compliance with Rule 26.[3] (see Exhibit B, Exhibit C, Exhibit D, and Exhibit F).

**LAW:**

**Rules of Civil Procedure:**

"(2) Disclosure of Expert Testimony.

(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. USCS Fed Rules Civ Proc R 26(a)(2).

[3] While this certification is required before filing a motion to compel answers to interrogatories and production of documents and inspection of things pursuant to Rule 37, it is not clear whether it is required with regarding to expert disclosures see Id.

The Federal Court Rules for Civil procedure provide for depositions of experts by stating that "(A) A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition **shall not be conducted** until after the report is provided." (emphasis supplied) USCS Fed Rules Civ Proc R 26(b)(4)(A).

By contrast, the Rhode Island state Superior Court Rules for civil procedure provide for depositions of experts by stating, "any party may apply to the court for an order establishing a schedule of such interrogatories, responses, and depositions." RI R.C.P. Rule 26(b)(4)(A).

**Case Law:**

The Federal Court Rules of Civil Procedure regarding expert disclosure are based upon a "desire to make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent... In the arena of expert discovery - a setting which often involves complex factual inquiries - Rule 26 increases the quality of trials by better preparing attorneys for cross-examination,... minimizing surprise,... and supplying a helpful focus for the court's supervision of the judicial process... In short, Rule 26 promotes fairness both in the discovery process and at trial. For Rule 26 to play its proper part in this salutary scheme, discovery must not be allowed to degenerate into a game of cat and mouse." (internal citations omitted) Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992)

"Exclusion of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a)" LaPlace-Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002) (citing Samos Imex Corp. v. Nextel Communications, Inc., 194 F.3d 301, 305 (1st Cir. 1999)).

Another basis for exclusion of evidence is "cumulativeness" LaPlace-Bayard v. Batlle, 295 F.3d 157, 163-164 (1st Cir. 2002).

Moreover, when it is apparent that a conscious strategy decision regarding expert disclosure is made, a party "cannot expect once again to be relieved of the consequences of their own judgment call" LaPlace-Bayard v. Batlle, 295 F.3d 157, 164 (1st Cir. 2002).

Our First Circuit Court of Appeals shares the Eleventh Circuit's edict that "**each witness** must provide a written report containing the information required under Rule 26" Pena-Crespo v. Puerto Rico, 408 F.3d 10, 13 (1st Cir. 2005) (citing Prieto v. Malgor, 361 F.3d 1313, 1317-18 (11th Cir. 2004)) "A party who fails to disclose the necessary information under Rule 26(a), without substantial justification, is not permitted to present the witness' testimony at trial. Fed. R. Civ. P. 37(c)(1)." Pena-Crespo v. Puerto Rico, 408 F.3d 10, 13 (1st Cir. 2005).

**ARGUMENT:**

Defendant's correspondence, Exhibit B, supports a conclusion that the Amalgam disclosure is not mere inadvertence, but is willful design and conscious strategy. After raising issue with Defendants' initial disclosure (Exhibit A), Plaintiff received a response, Exhibit B. In their response, Defendants indicates that the initial disclosure (Exhibit A) was the product of consultation with "medical malpractice attorneys" see Exhibit B.[4] Defendant further conveys a sense that they complied with the "spirit" Id. of Rule 26; and Defendants reason that the experts are "subject to deposition" Id. Unfortunately, defendants ignore the Federal Court "desire to make a trial less a game of blind man's buff and more a fair contest" supra Thibeault, and the prohibition of deposition before a report from the witness is provided USCS Fed Rules Civ Proc R 26(b)(4)(A). It was anticipated, however, that a signed amendment would be forthcoming, but its format was unknown until received (Exhibit D).

4 It is unknown whether any of these attorneys are admitted to any Federal District Court or if admitted, whether they were aware the present litigation was pending in Federal Court.

Willful non-compliance is further supported by a line-by-line comparison of the two disclosures, Exhibit A against Exhibit E. Notwithstanding the cure contained in Exhibit E to the inadvertent omissions contained in Exhibit A[5], all other words, sentences, and paragraphs in Exhibit A and Exhibit E are otherwise identical. The omission of details regarding Dr. Rizzo's prior testimony and the amalgamated disclosure (collectively "Defects"), are thus more consistent with a an intentional, conscious, willful, and rational thought process in light of the opportunity to cure presented by Plaintiff's good faith notice (see generally Exhibit B, Exhibit C, Exhibit D, and Exhibit F).

Further analysis of the Defects reveals substantive problems now faced by Plaintiff. The now new, and incomplete, disclosure of Dr. Rizzo's prior testimony (see Exhibit E, p.3) should not be excused and should have surfaced a full disclosure or a request by Defendants for relief. Defendant should have pressed their expert for this required and important information, and/or sought additional time from opposing counsel or the Court or both for this purpose. Given the limited number of times dr. Rizzo testified within in the last four years (Id.), the task should not be an overly burdensome one. Failure to provide specificity either deprives Plaintiff the opportunity to impeach Dr. Rizzo's opinion with contradictory opinions contained in any of those other four occasions (Exhibit E p.3), or deprives the Plaintiff the opportunity to bolster their own expert opinions with corroborative testimony, or both.

Also, since inherit in the Amalgam is the inability to attribute any particular statement, fact, or opinion to any expert, adding the expert signatures and language, "[p]repared by consultation with and signed as to content" (Exhibit p.6), to the Amalgam inflames matters by evidencing an intention to deprive Plaintiff the opportunity to structure and target specific cross-examination tailored to either expert. Alternative, Plaintiff risks revealing through cross-examination of one expert questioning strategy which would be more effective against the other Defense expert. Moreover, Rule 26 prohibits opposing party from taking the deposition of the testifying expert until

---

5 Comparing the original disclosure, Exhibit A, with the supplemental disclosure, Exhibit E, readily reveals inadvertent omissions. The inadvertent omissions are the failure to include any expert signature, the failure to reference the expert's fee, and the failure to reference to prior testimony for each expert (see Exhibit A; see also Exhibit E)

receipt of the expert report. USCS Fed Rules Civ Proc R 26(b)(4)(A). The Amalgam disclosure therefore leaves Plaintiff with his hands tied, guessing in the dark.

While counsel must necessarily work with their expert to a certain extent, in order to leverage time and financial resources associated with the expert disclosure, Defendants' Amalgam disclosure still appears more the product of counsel's intellect; distinguished from an intellect clearly guided by the years of particular education, training, skill, or experience possessed by the respective expert. The judgment call and decision to provide an amalgamated disclosure, if nothing else, raises a cumulative evidence objection supra LaPlace-Bayard v. Batlle.

Specifically, it is impossible for Plaintiff to distinguish which opinion belongs to the neuro-opthamalogist as opposed to the emergency medicine/correctional medicine expert, and upon which fact either expert respectively relies upon in arriving at their distinct opinion. Based upon the scope of discovery conducted in this case, the policy, procedure, and applicable standard of care in terms of timely response to vision specific complaints has been established through discovery and is not genuinely controverted.[6] A fair reading of Defendants' Amalgam therefore is that with respect to the issue of timely and appropriate response to Plaintiff's request for vision specific medical care, either or both experts are equally qualified to opine[7] and due to the failure of Defendants' Amalgam to state the specific standard of care, the time frame for responding or timeliness for scheduling an appointment with the eye-doctor are not disputed and

---

6 Plaintiff observes that the Defendants Amalgam does not reference or comment on the standard of care regarding timely response to vision specific complaints. The Defendants' Amalgam is more a factual disagreement which suggests that they were unaware of Mr. Moreau's vision specific complaint and, if anything, believed it was a complaint related to Plaintiff's prescription (see generally Exhibit A; see also Exhibit E). Plaintiff proffers that the Defendants failed to comply with their own established practices and procedures established by written policy and practice as provided through testimony of various Defendants.

7 Plaintiff does not intend to convey that Dr. Santoro could be qualified to comment in the areas encompassed by Dr. Rizzo. However Plaintiff does concur that Dr. Rizzo, being particularly trained in neuro-opthalmology and a licensed M.D., and based upon the field of professional negligence present in this case is competent to testify in matters which are fairly attributable to Dr. Santoro consistent with Debar v. Women & Infants Hosp., 762 A.2d 1182, 1187 (R.I. 2000) and Sheeley v. Memorial Hosp., 710 A.2d 161, 166 (R.I. 1998).

are consistent with Plaintiff's expert opinions.[8] Thus the testimony of Dr. Santoro is cumulative or irrelevant since Plaintiff's expert criticizes the Defendants for failure to comply with their own established standards of care (see generally Exhibit G).

Sending the Plaintiff off on a wild game of cat and mouse violates the principals established by Thibeault supra, and offers Defendants an unfair advantage to capitalize on the planned diminished effectiveness of Plaintiff's expert depositions. While an Amalgam disclosure may comply with the State Court rules of Civil Procedure supra,[9] it is clear that Defendants' trial strategy, by design, is to prejudice Plaintiff's ability to cross-examine defendants' experts or to mask weak witnesses in an effort to win an endurance battle. In good faith, Plaintiff persistently reminded Defendants that their disclosure was defective (see Exhibit B, Exhibit C, Exhibit D, and Exhibit F). Plaintiff cannot be expected to file a motion for relief on behalf of Defendants, even though Defendants' may have "occasioned" same.

Since the Defects are perpetuated through Defendants' post-notice amendment, Exhibit E, the conclusion that Defendants have consciously and cognitively executed willful strategy decisions which are not the product of inadvertence is appropriate. These defense strategy decisions deprive the Plaintiff a strategic even playing field supra Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992).

Moreover, in the face of impending trial and a pre-trial Memorandum due by August 31, 2006, Defendants disclosure leave Plaintiff unable to determine if any rebuttal witness is required, since Defendant's disclosure also is vague regarding any clearly defined standard of care established by any policy, practice, procedure, or learned treatise regarding proper response times to vision specific complaints.

---

8 For Plaintiff's expert disclosure, see generally Exhibit G.

9 The State Court supra makes clear that depositions are permitted free of the condition precedent of the experts' Federal Court Rule 26 expert report compare USCS Fed Rules Civ Proc R 26(b)(4)(A) supra.

Given the Plaintiffs incarceration, and his thin financial resources, Plaintiff should be entitled to his own strategy choice of deposing either, none, or both Defense experts. The Amalgam disclosure keeps Plaintiff guessing as to which expert's thought(s) belong to which expert, and saps the Plaintiffs thin trial resources by inviting deposition of both Defense experts with diminished effectiveness supra. The Amalgam overtly invites a deposition of both (Exhibit B), thus depriving Plaintiff the opportunity of exercising free choice. If Plaintiff accedes to Defendants invitation and deposes both Defense experts, then based upon the calculated Amalgam presented by Defendants the anticipated deposition answers will be peppered with tailored responses from the expert deponent which will grant that deponent safe passage through the rigors of cross-examination at trial, thus rendering inert any potential benefit to be obtained from the costly deposition.

**CONCLUSION:**

In conclusion, the Defects in Defendants' Amalgam deprive the Plaintiff the real opportunity to prepare an effective cross-examination based upon either prior testimony of the expert or based upon binding distinct responses that can be attributed to either respective expert.

Under these circumstances, exclusion of one or both of Defendants experts is justified together with such additional or alternative relief as this court deem fair. The standard sanction is exclusion expert testimony See LaPlace-Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002), which is warranted in light of Defendants' own clear conscious judgment call.

Plaintiff,
By Counsel,

Joseph-Anthony DiMaio, Esq.
Attorney #3910
Mckinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655
(401) 722-9106 (fax)

**CERTIFICATION**

I hereby certify that a true copy of the within was mailed to **Thomas A. Palombo Esq.**, 150 South Main Street, Providence, RI 02903, on Monday, July 17, 2006