# EXHIBIT A.

State of Rhode Island and Providence Plantations

**DEPARTMENT OF ATTORNEY GENERAL**
150 South Main Street • Providence, RI 02903
(401) 274-4400
TDD (401) 453-0410

*Patrick C. Lynch, Attorney General*

June 14, 2006

**Joseph-Anthony DiMaio, Esquire**
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, RI 02861

**Re: <u>Richard Moreau v. State of Rhode Island, et al.</u>, USDC 04-459 S**

Dear. Joe:

Accompanying please find Defendants' Expert Disclosure. Also, five (5) sets of Supplemental Responses to Interrogatory No. 4. They are unsigned and I will get you signed copies within the week.

Thank you for your time and consideration.

Very truly yours,

Thomas A. Palombo
Assistant Attorney General
Ext. 2296

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**RICHARD MOREAU**
**PLAINTIFF**

**V.** **C.A. NO. 04-459 S**

**STATE OF RHODE ISLAND,**
**DEPARTMENT OF CORRECTIONS,**
**ASHBEL T. WALL, DIRECTOR,**
**JAMES WEEDEN, WARDEN,**
**JOSEPH MAROCCO, ASSOCIATE DIRECTOR**
**OF HEALTH CARE, SCOTT ALLEN, MD,**
**DR. SMILEY, R. FIGUEROA,**
**BARBARA A. CARROLL, RN,**
**MARYLYN GREJDUS, RN,**
**JOHN DOE (1), JOHN DOE (2), JOHN DOE (3)**
**DEFENDANTS**

**DEFENDANTS' EXPERT DISCLOSURE**

Now come Defendants and, pursuant to the Court's Pretrial Order, hereby makes the following expert disclosure:

**John P. Santoro, M.D., F.A.C.E.P.**
Vice Chair, Department of Emergency Medicine
Assistant Professor, Tufts University
School of Medicine
Department of Emergency Medicine
759 Chestnut Street
Springfield, MA 01199

**Joseph F. Rizzo, III, M.D.**
Massachusetts Eye and Ear Infirmary
243 Charles Street
Boston, MA 02114

John P. Santoro, M.D., F.A.C.E.P. shall be presented as an expert in emergency medicine and in correctional medicine. A copy of his latest Curriculum Vitae is attached. In addition to his education and experience, including thirteen (13) years as a correctional physician, Dr. Santoro shall base his testimony on the following documents that he has received and reviewed:

- Plaintiff Moreau's medical records and documents
- Plaintiff Moreau's DOC medical record and documents
- Plaintiff Moreau's Deposition
- Medical records from Rhode Island Hospital
- KOR Deposition/medical records of David M. Barry, MD
- Deposition of Marylyn Hale RN Vol. I & II

- KOR Deposition/medical records of George Jacewicz, MD
- Deposition of Pauline Marcussen
- Deposition of George Truman, Jr.
- Deposition of Officer Jeffrey Laurie
- Deposition of Joanne Moreau
- Deposition of Joseph Marocco
- Deposition of Barbara Carroll, RN
- Deposition of Lt. Joseph Knight
- KOR Deposition/medical records of IN-SIGHT
- Deposition of Scott Allen, MD
- Deposition of Dr. Harrison Smiley
- KOR deposition/medical records of St. Joseph's Medical Center
- KOR depositions/medical records of Ann Fitzpatrick, MD, Rhode Island Hospital Eye Clinic, Svetlana Borkovich, MD, J. Frederick Harrington, MD and Rhode Island Hospital

Dr. Santoro also utilized Tintanalli's Study Guide of Emergency Medicine Fourth Edition and Rosen's Textbook of Emergency Medicine.

Joseph F. Rizzo, III, M.D. shall be presented as an expert in Neuro-ophthalmology. A copy of his latest Curriculum Vitae is attached. In addition to his education and experience, Dr. Rizzo shall base his testimony on the following documents that he has received and reviewed:

Medical Records:

David M. Barry, M.D.
George J. Jacewicz, M.D.
Camille G. Salame, M.D.
Francis X. Figueroa, M.D.
Eye Clinic/Rhode Island Hospital
Emergency Room/Rhode Island Hospital
Neurosurgery Clinic/Rhode Island Hospital
Frank DiChiaia, O.D.
ENT Clinic/Rhode Island Hospital
Medical Records - Rhode Island Dept. of Corrections
Correspondence Records- R. I. Dept. of Corrections
Medical Report - Rhode Island Department
of Corrections Sex Offender Program
Radiology Reports

Hospital Admissions:
St. Joseph Hospital: Admission/Barry 1982
St. Joseph Hospital: Admission/Barry 1984
St. Joseph Hospital; Admission/Barry 1985

St. Joseph Hospital: Admission/Barry 1987
William Buckus Hospital: Admission/Salame
Rhode Island Hospital/J. Frederic Harrington, M.D.

Plaintiff's Expert Disclosure:
Thomas R. Hedges, III, M.D.

Depositions:
Richard Moreau
Scott Allen, M.D.
Harrison Smiley
Joseph Marocco
Marylyn Hale, R.N.
Barbara A. Carroll, R.N.
Pauline Marcussen
Jeffrey Laurie
Joseph Knight
George H. Truman

KOR Depositions and medical records:
George Jacewicz, M.D.
Garden City Eye Care
In-Sight
Frances Figueroa, M.D.
David M. Barry, M.D.
St. Joseph's Medical Center

Answers to Interrogatories:
Richard Moreau

Defendants hereby disclose that the above-named medical experts in this civil action shall testify, to a reasonable degree of medical certainty, consistent with the following:

Mr. Moreau came to the DOC Intake Services Center in January 2000, at which time his hydrocephalus was noted and his vision was 20/40 in both eyes. At the time, Mr. Moreau has a shunt that drained fluid into his abdomen. The hydrocephalus was not a chronic condition, it was treated with the shunt, and did not need to be treated on a chronic basis. In March 2000, Mr. Moreau stated to a DOC physician that he knew the signs of blockage and/or infection of his shunt and would alert medical staff if any of the symptoms occur.

In January 2001, a DOC physician sent Mr. Moreau to Rhode Island Hospital for a CAT Scan. The CAT Scan report was faxed to Mr. Moreau's physician, Dr. Salame, who discussed it with the DOC physician, stated it looked benign, that there was no shunt blockage and that there was no pressure on the brain. In March 2001, the DOC physician so informed Mr. Moreau.

At the time, Mr. Moreau complained of an occasional and less than one minute feeling of swaying, with no other symptoms. He was advised to report if it recurs, increases, or persists. In March and April 2001, Mr. Moreau complained of dizziness, headaches, earwax, and ear pain. It is noted that he came to DOC with hearing problems and hearing aids. At this time, Mr. Moreau requested a new hearing aid or aids. Mr. Moreau's ear problems were treated by the medical staff.

On September 17, 2001, Mr. Moreau wrote to Joseph Marocco, DOC Health Services, and complained of a vision problem and his eyeglasses. His letter mentions his eyeglasses numerous times, and that he was willing to pay for new glasses. Mr. Moreau asked to be placed at the top of the list to see the eye doctor the next time he visited. Mr. Marocco wrote back on September 26, 2001, stating that he had spoken to a nurse, that Mr. Moreau was on the list to see Dr. Smiley, an optometrist, on October 29, 2001, and that he should speak to a nurse if he had further questions. On that October 29 date, Mr. Moreau was transferred back to the facility he had just left to see Dr. Smiley. To a reasonable degree of medical certainty, the response of Mr. Marocco to Mr. Moreau does not constitute deliberate indifference to Mr. Moreau's medical needs and does not show any negligence. It must be pointed out that Mr. Marocco was an administrator of health services, not a medical professional. Mr. Marocco's written response and his deposition testimony demonstrate that he understood Mr. Moreau to be complaining about his eyeglasses as the cause of his vision problem. This was a reasonable response based on Mr. Moreau's letter repeatedly stating that he needed new eyeglasses and was willing to pay for them if necessary. It is clear from the records reviewed that, on or about the September 17 date, Mr. Moreau did not associate any symptoms he was experiencing with his hydrocephalus and/or his shunt. It should also be noted that medical intervention at that time may not have restored Mr. Moreau's vision to his prior baseline.

Also on September 26, 2001, Barbara Carroll, R.N., a nurse practitioner conducted a physical exam. An eye test, conducted by another nurse, was noted as 20/40 without glasses. Nurse Carroll's opinion was that Mr. Moreau should see a doctor of optometry, and she recorded that in the physical examination. Nurse Carroll's examination was reviewed and signed by a medical doctor the following day. Around this September 26, 2001 date, an appointment with the optometrist, Dr. Smiley, was scheduled for October 29, 2001. He saw the optometrist on that date. To a reasonable degree of medical certainty, Nurse Carroll's examination and note that Mr. Moreau should be seen by an optometrist does not demonstrate her deliberate indifference to Mr. Moreau's medical needs and does not constitute negligence or medical malpractice. Nurse Carroll conducted an examination, noting the need to see a doctor of optometry, which was reviewed by a physician the next day, and an appointment was scheduled with the optometrist.

Mr. Moreau wrote to Mr. Marocco again on October 14, 2001. He stated that his eyesight was very bad, that it was dark, and that he could read a newspaper, but barely. Mr. Moreau stated that he understood he was on the list to be seen by Dr. Smiley on October 29, 2001, but had heard that sometimes Dr. Smiley did not see all the people on the list. He expressed his fear that he would not be seen. Once again, Mr. Moreau wrote about eyeglasses, stating that he had $100 set aside to buy new eyeglasses. Mr. Moreau asked about contacting Dr. Smiley directly. It should also be noted that he stated he was not complaining about the medical staff, that they are very good, and that the nurses and doctors are very professional. Mr.

Marocco received Mr. Moreau's letter on October 25, 2001. Mr. Marocco wrote back on November 5, 2001, stating that he had called the Intake Service Center, learned that Mr. Moreau had been transferred to High Security, and that he made arrangements for Mr. Moreau to be transferred back to Intake for his October 29, 2001 appointment with Dr. Smiley. Mr. Marocco also stated his understanding that Mr. Moreau was seen on that date. He further stated for Mr. Moreau to let him know if he had any additional concerns regarding his eyesight. Again, as discussed above, as an administrator of health services, who was not a medical professional, Mr. Marocco's response to Mr. Moreau does not constitute deliberate indifference to Mr. Moreau's medical needs and does not show any negligence.

Marylyn Hale, R.N. was the nurse at the High Security Facility to which Mr. Moreau was transferred in very late October 2001. The medical records show that she was not involved in Mr. Moreau's care until November 2001. In fact, much of Nurse Hale's care appears to be quite routine. Nurse Hale did respond to Mr. Moreau's "dizzy spell" on December 24, 2001; the event had subsided, he felt better, and he was advised to hydrate, eat lunch and return to the clinic as needed. Nothing in the records reviewed supports any claim of deliberate indifference or of negligence or medical malpractice against Nurse Hale.

Respectfully submitted,

DEFENDANTS
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Thomas A. Palombo, Bar No. 4212
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2296
Fax: (401) 222-2995

**CERTIFICATION**

I, the undersigned, hereby certify that I mailed a true copy of Defendants' Expert Disclosure by first class mail, postage pre-paid, on this 14th day of June, 2006 to **Joseph-Anthony DiMaio, Esquire,** McKinnon & Harwood, 1168 Newport Avenue, Pawtucket, RI 02861.