UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RICHARD MOREAU
PLAINTIFF

V. C.A. NO. 04-459 S

STATE OF RHODE ISLAND,
DEPARTMENT OF CORRECTIONS,
ASHBEL T. WALL, DIRECTOR,
JAMES WEEDEN, WARDEN,
JOSEPH MAROCCO, ASSOCIATE DIRECTOR
OF HEALTH CARE, SCOTT ALLEN, MD,
DR. SMILEY, R. FIGUEROA,
BARBARA A. CARROLL, RN,
MARYLYN GREJDUS, RN,
JOHN DOE (1), JOHN DOE (2), JOHN DOE (3)
DEFENDANTS

**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants, State of Rhode Island, Department of Corrections ("State" or "DOC"), Joseph Marocco ("Marocco"), Barbara Carroll ("Carroll") and Marilyn (formerly, "Grejudus") Hale ("Hale"), hereby move the Honorable Court for a grant of Summary Judgment on Plaintiff, Richard Moreau's ("Plaintiff" or "Moreau"), First Amended Complaint ("Cpt."), Count III – Constitutional Deprivations. In support hereof, Defendants submit a Local Rule 56 Statement of Undisputed Facts with Exhibits A-O, the Affidavit of DOC Director A.T. Wall with Exhibits 1-7 and a supporting Memorandum of Law.

**Please note**: 1.) the Court has granted Motions for Certification and Substitution as to Complaint, Count I – Negligence and Professional Malpractice, for Defendants Wall, Weeden, Marocco, Carroll and Hale; 2.) all Defendants have filed a Motion for Judgment on the Pleadings as to Count II – Violation of Open Records Statute; and 3.) Defendants Wall and Weeden have previously filed a Motion for Summary Judgment.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RICHARD MOREAU
PLAINTIFF

V. C.A. NO. 04-459 S

STATE OF RHODE ISLAND, ET AL.
DEFENDANTS

# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

This Memorandum of Law supports the Motion For Summary Judgment filed by Defendants, State of Rhode Island, Department of Corrections ("State" or "DOC"), Joseph Marocco ("Marocco"), Barbara Carroll ("Carroll") and Marilyn (formerly, Grejudus) Hale ("Hale") (the "Defendants"), pursuant to Fed. R. Civ. P. Rule 56. Defendants submit the requisite Local Rule 56 Statement of Undisputed Facts ("SUF") with Exhibits A- O and the Affidavit of A.T. Wall ("Wall Aft.") with Exhibits 1-7. Defendants assert that there are no genuine issues of material fact and respectfully request that the Summary Judgment be granted on Plaintiff, Richard Moreau's ("Plaintiff" or "Moreau"), First Amended Complaint ("Cpt."), Count I - Negligence and Professional Malpractice and Count III – Constitutional Deprivations.

**Please note:** 1.) the Court has granted Motions for Certification and Substitution as to Complaint, Count I – Negligence and Professional Malpractice, for Defendants Wall, Weeden, Marocco, Carroll and Hale; 2.) all Defendants have filed a Motion for Judgment on the Pleadings as to Count II – Violation of Open Records Statute; and 3.) Defendants Wall and Weeden have previously filed a Motion for Summary Judgment on all claims. Contemporaneous herewith, an Amended Motion for Judgment on the Pleadings and an Amended Motion for Summary Judgment by Wall and Weeden have been filed to incorporate the present arguments.

Accordingly, the focus here is on the constitutional claims against Defendants, State, Marocco, Carroll and Hale (Count III), and the negligence claim against the State (Count I).

## FACTS AND TRAVEL

The Local Rule 56 Statement of Undisputed Facts ("SUF") in support of summary judgment sets forth the facts. Plaintiff, Richard Moreau ("Moreau"), was at all times material an inmate at the DOC Adult Correctional Institution. Exhibit A - First Amended Complaint ("Cpt.) ¶ 1. The instant Defendants are the State, Joseph Marocco, DOC's Associate Director of Health Care Services, Barbara Carroll. R.N., a DOC nurse and physician extender, and Marylyn Hale, R.N., a DOC nurse. Cpt., ¶¶ 4, 8, 9 and 13. Plaintiff's Complaint contains three (3) claims: Count I - Negligence and Professional Malpractice; Count II - Violation of Open Records Statute and Count II - Constitutional Deprivations (Count III). See Cpt. Moreau alleges, *inter alia*, that while incarcerated within the R.I. Department of Corrections ("DOC"), he lost his vision and became legally blind. Id. Moreau asserts that this was caused by the Defendants unconstitutional acts and omissions and by their negligence. Id. Reference is made below to the Paragraphs of the SUF, Exhibits (A-O) attached thereto and the Affidavit of DOC Director A.T. Wall and Exhibits (1-7) attached thereto.

## ARGUMENT

### 1. Plaintiff Moreau Has Failed To Exhaust His Administrative Remedies Under DOC's Inmate Complaint And Grievance Procedures.

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a) (2000 ed.), provides in its entirety that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. (Emphases added.)

The United States Supreme Court has examined both emphasized phrases.

In the landmark case of Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819 (2001), the Court considered an inmate lawsuit brought pursuant to § 1983 claiming that correctional officers violated the Eighth Amendment by assaulting and handcuffing him, and denying medical attention to treat the ensuing injuries. Booth sought various forms of relief, including monetary damages. At the time, the Pennsylvania Department of Corrections had a grievance system under which an inmate's complaint would be referred to a grievance officer for investigation and resolution, and if the inmate was dissatisfied with the outcome, an appeal could be made to an intermediate reviewing authority, with the possibility of a further and final appeal to a central review committee. Id. at 734, 121 S.Ct. at 1822. Although Pennsylvania's grievance system was able to address Booth's claims, it had no authority to award monetary damages as Booth sought. Id.

Before filing his Federal § 1983 lawsuit, Booth availed himself to the first grievance level, but he "never sought intermediate or final administrative review after the prison authority denied relief." Id. at 734, 121 S.Ct. at 1822. Because Booth did not exhaust "administrative remedies ... available" within the meaning of § 1997e(a), the District Court dismissed the lawsuit and the Third Circuit affirmed. On certiorari, the Supreme Court identified the issue as "whether or not a remedial scheme is 'available' where . . . the administrative process has authority to take some action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress." Id. at 736, 121 S.Ct. at 1822-23. The Court responded affirmatively.

The Court observed that § 1997e(a)'s phrase "such administrative remedies as are available," requires "a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." Id. at 738, 121 S.Ct. at 1823. Thus, the Court concluded that "Congress's imposition of an obviously broad[ ] exhaustion requirement," provided compelling evidence of its intent to require prisoners to exhaust all available administrative remedies prior to filing suit, even if the specific relief sought is not administratively available. Id. at 740-41, 121 S.Ct. at 1825.

Following Booth, the Supreme Court examined the phrase "prison conditions" after the Second Circuit determined that the exhaustion requirement did not apply to an inmate who brought an Eighth Amendment claim alleging an isolated incident of excessive force. The Supreme Court reversed the appellate court, and held that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002)(emphasis added).

Very recently, in Woodford v. Ngo, 2006 WL 1698937 (U.S. June 22, 2006), the U.S. Supreme Court again considered the PLRA and inmate exhaustion of grievance procedures. The Court reaffirmed its Booth holdings that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory [and that] a prisoner must now exhaust administrative remedies even where the relief sought--monetary manages--cannot be granted by the administrative process." Id. at 2. The Court also reiterated its Nussle ruling that "exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983." Id. However, the High Court went even further, holding that under the PLRA:

"proper exhaustion of administrative remedies is necessary" and the PLRA cannot be satisfied "by an untimely or otherwise procedurally defective administrative grievance or appeal." Id.

In this case, the following two (2) DOC policies should have been utilized by Moreau:

- "Inmate Complaints Relative to Health Care Services" - DOC Policy 18.11
- "Inmate Grievance Procedure" - DOC Policy 13.10

At all relevant times, DOC had in effect Policy 18.11, Inmate Complaints Relative to Health Care Services, and Inmate Grievance Procedure, DOC Policy 13.10. SUF ¶ 8 and 9; Wall Aft., ¶ 5 and 16; Exhibits 1 and 6. Moreau is familiar with the grievance policy, because he filed a grievance in October 2000 that he should be designated as a protective custody inmate. SUF, ¶ 25; Wall Aft, ¶ 17; Exhibit 7. It should be noted that the grievance policy states: "Decisions by qualified medical personnel relating to an inmate's health" are "non-grievable." SUF, ¶ 19; Wall Aft., ¶ 19; Exhibit 6. However, Moreau is not complaining about medical decisions. Moreau's claims are not against medical doctors.[1] Instead, he sues an administrator (Marocco) and two nurses (Carroll and Hale).[2] The nature of his Complaint is delay in medical care and that requests for medical care were not timely or properly handled.

---

[1] In fact, Moreau dismissed from suit Dr. Scott Allen, DOC's former Medical Director and Dr. Harrison Smiley, the optometrist who saw him at the Intake Services Center on October 29, 2001. Also, Dr. Francis Figueroa, the ophthalmologist who saw Moreau in November 2001, was removed as a named defendant in the First Amended Complaint. Moreover, John Doe "unknown doctor" was named in this case; however, no such doctor was ever identified or sued. Thus, there are no doctors or physicians named as defendants in the civil action.

[2] Nurse Carroll was also a physician extender (or nurse practitioner); however, as seen from her one contact with Moreau, the September 26, 2001 physical examination she conducted, her examination at issue here was reviewed and signed by a medical doctor. Exhibit K.

As the First Circuit recently ruled in Acosta v. United States Marshals Service, 445 F.3d 509, 512 (1st Cir. 2006), "'[p]rison conditions'" under this provision [the PLRA] include individual instances of medical mis- or non-treatment." This precept is applicable here.

DOC Director Wall has filed an Affidavit in this case, testifying as follows:

- "DOC Policy 18.11 was established so that persons committed to DOC's care could file complaints regarding health services such as those found in Mr. Moreau's September and October letters to Mr. Marocco." Wall Aft., ¶ 13.
- "Mr. Moreau's complaint that his oral and written requests for medical care were not addressed, or were not addressed in a timely manner, is grievable under [DOC Policy 13.10] the inmate grievance policy." Wall Aft., ¶ 22.
- "Mr. Moreau's complaint that DOC's failure to retain medical request slips is a violation of law is also grievable under [DOC Policy 13.10]." Wall Aft., ¶ 23.

DOC Policy 18.11 - "Inmate Complaints Relative to Health Care Services" - establishes a mechanism to address inmates' complaints about Health Services in a timely manner. Id.[3] Policy 18.11 seeks to have complaints resolved informally and at the lowest level, and inmates are encouraged to seek relief from staff (nurses, physicians, etc.), including making a second sick call medical request. Id. If unresolved, inmates should write to the "Health Care Administrator" then and now, Defendant Marocco (though under a different title). Id. If the administrator does not resolve the complaint, the inmate may appeal to the Medical Program Director. Id.

[3] As discussed above, "health care is not a 'grievable' area of institutional life, except as it pertains to the interpretation and/or application of departmental and/or facility policies, rules, and procedures." Id. Nonetheless, DOC has both a grievance policy and a health services complaint policy and, under clear Supreme Court precedent, Moreau was required to exhaust both.

Moreau did write to Marocco, on September 17, 2001 and again on October 14 , 2001. Exhibits G and L. Marocco made inquiries, took action and responded in writing. Exhibits H, I and M. Thereafter, if Moreau considered the matter unresolved, he was required to appeal to the medical director. Id. He did not. Wall Aft., ¶ 15.

Nor did Moreau file any grievance under the Inmate Grievance Procedure - Policy 13.10. Wall Aft., ¶ 23. Moreover, Moreau could have filed an emergency grievance or grievances and he did not. Wall Aft., ¶ 25.

As the First Circuit recently stated: "There is no doubt that the web of exhaustion and related requirements may on occasion frustrate legitimate claims [however] the requirements are legislative and must be respected." Acosta, 445 F.3d at 514. Here, Moreau did not exhaust his administrative remedies under DOC's policies and procedures. Respectfully, his failure to exhaust is fatal to the entirety of his Complaint. Therefore, summary judgment should be granted on Moreau's Complaint, Count III, seeking damages for alleged constitutional violations, and Count I, seeking damages for negligence and malpractice.

2. **Moreau's Constitutional Claims Fail Against The State And The State Defendants In Their Official Capacities.**

Plaintiff Moreau's constitutional claims for monetary damages cannot be brought against the State or State officials acting in their official capacities. Will v. Michigan, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are "persons under §1983.") As the Supreme Court reasoned, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." 491 U.S. at 71. (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). "As such it is no different from a suit against the state itself." Id. (citing Kentucky v. Graham, 473 U.S. 159, 165-166 (1985) and Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n. 55

(1978)). Therefore, summary judgment should be granted and Count III dismissed as against the Defendant State and Defendants Marocco, Carroll and Hale in their official capacities.

**3. Defendants Did Not Violate The Eighth Amendment.**

As a preliminary matter, Plaintiff Moreau's Complaint, Count III, alleges deprivations under the U.S. Constitution's Eighth, Fifth and Fourteenth Amendments and under the R.I. Constitution's Article I, Section 2. He avers that Defendants occasioned cruel and unusual punishment, and due process and equal protection violations. But truly, this is an Eighth Amendment case.[4] Therefore, Defendants here focus on Plaintiff's Eighth Amendment claim.

The United States Supreme Court has held that an inmate must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" to state a cognizable claim under the U.S. Constitution's Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (Emphasis added.) Further, Eighth Amendment violations are those "incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" Estelle, 429 U.S. at 102, 97 S.Ct. at 290 (citations omitted). An Eighth Amendment claim has both an objective component - "Was the deprivation sufficiently serious?" and a subjective component - "Did the officials act with a sufficiently culpable state of mind?" Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991). As to the subjective component, the Supreme Court has adopted "subjective recklessness as used in the criminal

---

[4] In Whitley v. Albers, 475 U.S. 312, 326, 106 S.Ct 1078, 1088 (1986), a prisoner shot during a riot brought suit under the Eighth Amendment and, also, "raise[d] a claim that his 'substantive rights under the Due Process Clause of the Fourteenth Amendment' [ ] were infringed." (quoting Youngberg v. Romeo, 457 U.S. 307, 309, 102 S.Ct. 2452, 2454 (1982).) The Court reasoned that "the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one." 475 U.S. at 327, 106 S.Ct. at 1088. Thus, the Court held "that in these circumstances, the Due Process Clause affords respondent no greater protection than does the Cruel and Unusual Punishment Clause." Id.

law…as the test for 'deliberate indifference' under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 839-49, 114 S.Ct. 1970, 1980 (1994).

The First Circuit has stated that "[i]n order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991) (affirming judgment in a Section 1983 case alleging "deliberate indifference" in medical care). "[W]here there is no evidence of treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional, or evidence of acts or omissions so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred, summary judgment is appropriate." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (internal quotations omitted) (summary judgment granted in a Section 1983 "deliberate indifference" case arising from a prison suicide.) Considering each of the three instant Defendants, in turn, there is no genuine issue of material fact as to deliberate indifference and culpable state of mind.

As to Defendant Joseph Marocco, his correspondence from and to Moreau, his Answer to Interrogatory No. 13 (and his Deposition testimony) all support his understanding that Moreau was complaining about his vision because of his eyeglasses. SUF, ¶ 36 and 46; Exhibits G, H, I, J, M and N. Marocco was and administrator and not a medical professional. SUF, ¶ 37 and Exhibit J. Moreau's September 17, 2001 Letter to Marocco mentions eyeglasses and glasses six (6) times. SUF, ¶ 35; Exhibit G. Marocco wrote back to Moreau on September 26, 2001. Exhibit H. Marocco states that he spoke to a nurse at the Intake Services Center, that Dr. Smiley (the optometrist) was scheduled to be there on October 29, 2001, and that Moreau was on this list to see him at that time. Id. Marocco also wrote that if Moreau had any further questions, he should speak to a nurse. Id.

Moreau wrote again to Marocco on October 14, 2001, stating that his eyesight was very bad, that it was very dark, and that he could read a newspaper, but just barely. SUF, ¶ 44 and 45; Exhibit M. He also wrote that he had $100.00 set aside to buy new eyeglasses. Id. Moreau further wrote that he understood he was on the October 29, 2001 list to see Dr. Smiley, but heard sometimes all on the list did not get seen, and wanted to be sure he was seen. Id. He also wrote that he had no complaint about the staff and that they were very good. Id.

Marocco received the October 14 Letter on October 25, 2001 and wrote back on November 5, 2001. SUF, ¶ 46. Exhibit M and N. Marocco wrote that he called the nurse at Intake Services Center, learned that Moreau has been transferred to High Security, and made arrangements for him to be to be transported back to Intake for the October 29, 2001 appointment with Dr. Smiley. Id. Moreau was seen by Dr. Smiley at the October 29 appointment. Id. Marocco wrote that if Moreau had additional concerns regarding his eyesight, he should let Marocco know. Id.

Marocco understood that Moreau was complaining about his vision because of his eyeglasses and took the steps appropriate under those circumstances. See above. Importantly, Moreau had stated to a DOC physician that he knew the signs of blockage and/or infection of his shunt and would alert medical staff if any of the symptoms occur. SUF, ¶ 30; Exhibit C. Applying the applicable legal standard, Marocco actions in this case, as described above, demonstrate no "deliberate indifference" and no "culpable state of mind."

As to Defendant Barbara Carroll, she had only one contact with Moreau, the September 26, 2001 physical examination. SUF, ¶ 38-40; Exhibit K and L. Another nurse actually conducted Moreau's eye examination and Carroll discussed the eye exam with him. Id. Carroll decided Moreau should see a Doctor of Optometry and wrote a note to that effect on the Physical

Examination form. Id. The next day, September 27, 2001, the form was reviewed and signed by a physician, Dr. Osei. Id. Carroll testified that if she thought Moreau was in an acute medical state she would have asked medical staff to transport him to the emergency room. SUF, ¶ 43; Exhibit L. Carroll's actions, as outlined above, show no deliberate indifference and no culpable state of mind.

As to Defendant Marylyn Hale, her Interrogatory Answer No. 13 lists her contacts with Moreau. Exhibit O. The contacts can fairly be categorized as routine nursing. Id. On December 24, 2001, Hale responded to Moreau's reported dizzy spell. Id. Hale did not find Moreau dizzy, took his blood pressure and found it to be normal, and advised him to eat and drink, because he hadn't that day. Id. Hale's actions demonstrate no deliberate indifference and no culpable state of mind.

Accordingly, as to this administrator and these two nurses, the facts do not support the existence of any deliberate indifference to Moreau's medical needs and, thus, there has been no violation of the Eighth Amendment. Therefore, summary judgment should be granted and Count III dismissed as against the Defendants Marocco, Carroll and Hale.

**4. Defendants Have Qualified Immunity From Suit For The Constitutional Claims.**

The doctrine of qualified immunity precludes suits for money damages against state officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability [which]…is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The qualified immunity defense exists not only to shield officials from liability for damages, but also to protect from "the general costs of subjecting officials to

the risks of trial – of discretionary action, and deterrence of able people from public service." Harlow, 457 U.S. at 816. Qualified immunity leaves "ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." Bilida v. McCleod, 211 F.3d 166, 174 (1st Cir. 2000), citing Malley v. Briggs, 475 U.S. 335, 341, 343 (1986). In DeAbadia v. Izquierdo Mova, 792 F.2d 1187 (1st Cir. 1986), the First Circuit stated:

> ...we are presently concerned not with the correctness of defendants' determination, on the one hand, nor their subjective state of mind, but of the 'objective reasonableness' of their conduct... Harlow demands not prescience, but subjective good faith.

792 F.2d at 1193. Respectfully, the "objective reasonableness" determination is for the Court to make, and not for the jury. Id.

As set forth above in the constitutional argument above, there was no deliberate indifference to Moreau's known medical needs and no violation of his Eighth Amendment rights. Marocco, Carroll and Hale enjoy qualified immunity enjoy qualified immunity from suit for monetary damages.

As to Defendant Marocco, he understood that Moreau was complaining about his eyeglasses. See Argument and Exhibits, *supra*. His understanding was objectively reasonable based on Moreau's September 17, 2001 Letter. Id. Marocco also made sure that Moreau got to see Dr. Smiley on October 29. 2001, by having him transferred back to the facility he had just left to keep the appointment. Id. Marocco acted reasonably and in good faith, he was not an incompetent administrator, and he did not knowingly violate the law.

As to Defendant Carroll, her one contact with Moreau was the September 26, 2001 physical examination. See Argument and Exhibits, *supra*. Another nurse did his eye examination and Carroll discussed the eye exam with him. Id. Carroll decided Moreau should see a Doctor of Optometry, noted this on the Physical Examination form, and the next day, the

form was reviewed and signed by Dr. Osei. Id. Carroll testified that if she thought Moreau was in an acute medical state she would have asked medical staff to transport him to the emergency room. Id. Carroll actions were reasonable and made in good faith. Her actions were not incompetent and did not knowingly violate the law.

As to Defendant Hale, her contacts with Moreau were routine nursing other than her response to the December 24, 2001 reported dizzy spell, where she took Moreau's blood pressure and advised him to eat and drink. See Argument and Exhibits, *supra*. Hale acted reasonably and in good faith. She was not incompetent and did not knowingly violate the law.

Accordingly, the facts do not support a ruling that this administrator and these two nurses acted unreasonably or in bad faith. Moreover, there is no basis for a ruling that they were incompetent or knowingly violated the law. Therefore, summary judgment should be granted and Count III dismissed as against the Defendants Marocco, Carroll and Hale.

**5. Summary Judgment Should Be Granted On The Negligence Claim.**

"It is well-settled law in this jurisdiction that '[i]n any negligence action such as a medical malpractice case, it is the Plaintiff's burden to establish that the Defendant had a duty to act or refrain from acting and that there was a causal relation between the act or omission of the Defendant and the injury to the Plaintiff.'" Foley v. St. Joseph Health Services, 899 A.2d 1271, 1277 (2006)(citing Schenck v. Roger Williams General Hospital, 382 A.2d 514, 516-17 (R.I. 1997)). Defendants State, Marocco, Carroll and Hale respectfully submit that, based on the Statement of Undisputed Facts and as argued above, there is no genuine issue of material fact as to negligence and that summary judgment should be granted as to Count I – Negligence and Professional Malpractice.

## CONCLUSION

For the reasons set forth herein, Defendants, State of Rhode Island, Department of Corrections, Joseph Marocco, Barbara Carroll and Marilyn Hale, respectfully submit that there are no genuine issues of material fact and request that their Motion for Summary Judgment be granted on Plaintiff, Richard Moreau's, First Amended Complaint, Count I - Negligence and Professional Malpractice and Count III – Constitutional Deprivations.

Respectfully submitted,

DEFENDANTS
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Thomas A. Palombo, Bar No. 4212
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2296
Fax: (401) 222-2995

## CERTIFICATION

I, the undersigned, hereby certify that I mailed a true copy of this Memorandum of Law in Support of Motion for Summary Judgment, by first class mail, postage pre-paid, on this 27th day of July, 2006 to:

**Joseph-Anthony DiMaio, Esquire**
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, RI 02861