**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**RICHARD MOREAU**
**PLAINTIFF**

**V.** **C.A. NO. 04-459 S**

**STATE OF RHODE ISLAND, ET AL.**
**DEFENDANTS**

**AFFIDAVIT OF ASHBEL T. WALL, II**

Now comes Ashbel T. Wall, II, Director, State of Rhode Island, Department of Corrections, and hereby deposes and states the following under oath:

1. I presently serve as Director of the State of Rhode Island, Department of Corrections ("DOC"), and have held this position since March 2000. Previously, I served as DOC Interim Director from October 1999-February 2000 and as DOC Assistant Director from 1987-1999;
2. Pursuant to R.I. Gen. Laws § 42-56-1 et seq., my statutory duties and responsibilities include the care, custody and control of all sentenced and awaiting trial inmates in the State of Rhode Island, the management, supervision and control of the Adult Correctional Institutions for the State of Rhode Island, maintaining all records relative to the care and custody of persons committed to DOC and the promulgation of rules and regulations;
3. I am familiar with the facts of this case brought by Richard Moreau that allege deliberate indifference to his medical needs, negligence and that DOC's failure to retain medical request slips is a violation of law;
4. I understand that Mr. Moreau alleges that his oral and written requests for medical care were not addressed in a timely manner;
5. DOC Policy 18.11, Inmate Complaints Relative to Health Care Services, which became effective on April 12, 1999 and remained effective until June 2004, provided all persons

committed to the care of DOC a mechanism to address health services complaints in a timely manner. Exhibit 1.

6. I have had an opportunity to review the September 17, 2001 letter written by Mr. Moreau to Joseph Morocco, DOC's Associate Director of Health Care Services and the September 26, 2001 response returned to Mr. Moreau. Exhibit 2.

7. Mr. Moreau complained of a vision problem and his eyeglasses. Mr. Moreau's letter mentions his eyeglasses numerous times and that he was willing to pay for new glasses. Id.

8. Mr. Moreau asked to be placed at the top of the list to see the eye doctor the next time he visited. Id.

9. Mr. Marocco wrote back on September 26, 2001, stating that he had spoken to a nurse, that Mr. Moreau was on the list to see Dr. Smiley, an optometrist, on October 29, 2001, and that he should speak to a nurse if he had further questions. Exhibit 3.

10. Mr. Moreau wrote a second letter to Mr. Marocco on October 14, 2001 and I also reviewed this letter and Mr. Marocco's November 5, 2001 response. Exhibit 4 and 5.

11. Mr. Moreau stated that his eyesight was very bad, that it was very dark and that he could read a newspaper, but barely. He also stated that he understood he was on the list to be seen by Dr. Smiley on October 29, 2001, but had heard that sometimes Dr. Smiley did not see all the people on the list. Mr. Moreau expressed his fear that he would not be seen by Dr. Smiley and asked about contacting him directly. He also wrote that he had $100 set aside to buy new eyeglasses. Exhibit 4.

12. Mr. Marocco received Mr. Moreau's letter on October 25, 2001 and wrote back on November 5, 2001. He stated that he had called the Intake Service Center and learned

that Mr. Moreau had been transferred to High Security. Mr. Marocco wrote that he made arrangements for Mr. Moreau to be transferred back to Intake for his October 29, 2001 appointment with Dr. Smiley. Mr. Marocco also stated his understanding that Mr. Moreau was seen on that date. He also asked Mr. Moreau to let him know if he had any additional concerns regarding his eyesight. Exhibit 5.

13. DOC Policy 18.11 was established so that persons committed to DOC's care could file complaints regarding health services such as those found in Mr. Moreau's September and October letters to Mr. Marocco.

14. DOC Policy 18.11 requires that Mr. Moreau's complaint first be presented to the health care administrator, Mr. Marocco. Mr. Moreau did this. Then, if unresolved, an appeal may be taken to the Medical Program Director, who was Dr. Anne Spaulding at all pertinent times.

15. I have had an opportunity to review any and all complaints and letters by Mr. Moreau maintained by the office of the DOC's Medical Program Director. The records do not contain any complaint or appeal of the issues raised in Mr. Moreau's September 17 and October 14, 2001 letters to Mr. Marocco.

16. In addition to DOC policy 18.11, in the year 2001, DOC had in force and effect an Inmate Grievance Procedure, Policy No. 13.10, that provided a procedure for the resolution of those inmate complaints, problems and grievances which cannot be resolved informally. Exhibit 6.

17. The inmate grievance policy is available to all inmates because copies are kept in all secured facility libraries. Exhibit 6. Also, Mr. Moreau knew of the inmate grievance policy because he filed a grievance on October 5, 2000, that he should be designated as a

protective custody inmate. His request was denied on October 16, 2000 by Warden Cudworth. Mr. Moreau did not appeal the denial. Exhibit 7.

18. The inmate grievance policy permits a sentenced or pre-trial inmate to file a grievance concerning the interpretation or application of policies, rules, and procedures. Inmates may also file a grievance on any matter relating to access to privileges, programs, and/or services; conditions of care or supervision; and living facility conditions. Id.

19. The inmate grievance policy does state that decisions by qualified medical personnel relating to an inmate's health are non-grievable. Exhibit 6.

20. Mr. Moreau's complaint that his oral and written requests for medical care were not addressed, or were not addressed in a timely manner, is grievable under the inmate grievance policy.

21. Mr. Moreau's complaint that DOC's failure to retain medical request slips is a violation of law is also grievable under the policy.

22. The inmate grievance policy requires an inmate filing a grievance to initiate a complaint at the lowest level of the chain of command via an informal request. If the grievance is not resolved informally, the inmate may submit the complaint to the warden of the facility. If the warden's response is unsatisfactory, the inmate may submit the grievance to me, as DOC Director, through DOC's grievance coordinator. Exhibit 7.

23. A review of DOC's records shows that at no time during his incarceration with DOC did Mr. Moreau ever file a grievance concerning the issues he raised in his September 17 and October 14, 2001 letters to Mr. Marocco. Other than the protective custody grievance discussed above, Mr. Moreau filed no other grievance.

24. Emergency grievances are also provided for in the inmate grievance policy. The emergency grievance is forwarded to the level at which corrective action can be taken and needs to be plainly marked emergency. Exhibit 7.

25. A review of DOC's records shows that at no time during his incarceration with DOC did Mr. Moreau ever file an emergency grievance concerning the issues he raised in his September 17 and October 14, 2001 letters to Mr. Marocco. Mr. Moreau has never filed any emergency grievance.

I hereby swear that the foregoing is true and accurate to the best of my knowledge.

Ashbel T. Wall II

**Ashbel T. Wall, II, Director**
State of Rhode Island
Department of Corrections

Subscribed and sworn to before me this 27th day of July, 2006:

**Notary Public**

My Commission Expires: 09-09-09

**CERTIFICATION**

I, the undersigned, hereby certify that I mailed a true copy of this Affidavit by first class mail, postage pre-paid, on this 27th day of July, 2006 to:

Melissa DiFonzo

**Joseph-Anthony DiMaio, Esquire**
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, RI 02861