General Laws of Rhode Island

Copyright; 1953-2005 by the State of Rhode Island and Providence Plantations and Matthew Bender & Company, Inc.

*** Current through the January 2005 Session ***
*** Annotations current through February 3, 2006 ***

TITLE 42. STATE AFFAIRS AND GOVERNMENT
CHAPTER 56. CORRECTIONS DEPARTMENT

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

*R.I. Gen. Laws § 42-56-10* (2006)

§ 42-56-10. Powers of the director

In addition to exercising the powers and performing the duties, which are otherwise given to him or her by law, the director of the department of corrections shall:

(1) Designate, establish, maintain, and administer those state correctional facilities that he or she deems necessary, and may discontinue the use of those state correctional facilities that he or she deems appropriate for that action;

(2) Maintain security, safety, and order at all state correctional facilities, utilize the resources of the department to prevent escapes from any state correctional facility, take all necessary precautions to prevent the occurrence or spread of any disorder, riot, or insurrection of any state correctional facility, including, but not limited to, the development, planning, and coordination of emergency riot procedures, and take suitable measures for the restoration of order;

(3) Establish and enforce standards for all state correctional facilities;

(4) Supervise and/or approve the administration by the assistant directors of the department;

(5) Manage, direct, and supervise the operations of the department;

(6) Direct employees in the performance of their official duties;

(7) Hire, promote, transfer, assign, and retain employees and suspend, demote, discharge, or take other necessary disciplinary action;

(8) Maintain the efficiency of the operations of the department;

(9) Determine the methods, means, and personnel by which those operations of the department are to be conducted;

(10) Relieve employees from duties because of lack of work or for other legitimate reasons;

(11) Establish, maintain, and administer programs, including, but not limited to, education, training, and employment, of persons committed to the custody of the department, designed as far as practicable to prepare and assist each person to assume the responsibilities and exercise the rights of a citizen of this state;

(12) Establish a system of classification of persons committed to the custody of the department for the purpose of developing programs for each person;

(13) Determine at the time of commitment, and from time to time thereafter, the custody requirements and program needs of each person committed to the custody of the department and assign or transfer those persons to appropriate facilities and programs;

(14) Establish training programs for employees of the department;

(15) Investigate grievances and inquire into alleged misconduct within the department;

(16) Maintain adequate records of persons committed to the custody of the department;

(17) Establish and maintain programs of research, statistics, and planning, and conduct studies relating to correctional programs and responsibilities of the department;

(18) Utilize, as far as practicable, the services and resources of specialized community agencies and other local community groups in the development of programs, recruitment of volunteers, and dissemination of information regarding the work and needs of the department;

(19) Make and enter into any contracts and agreements necessary or incidental to the performance of the duties and execution of the powers of the department, including, but not limited to, contracts to render services to committed offenders, and to provide for training or education for correctional officers and staff;

(20) Seek to develop civic interest in the work of the department and educate the public to the needs and goals of the corrections process;

(21) Expend annually in the exercise of his or her powers, performance of his or her duties, and for the necessary operations of the department those sums that may be appropriated by the general assembly; and

(22) Make and promulgate necessary rules and regulations incident to the exercise of his or her powers and the performance of his or her duties, including, but not limited to, rules and regulations regarding nutrition, sanitation, safety, discipline, recreation, religious services, communication, and visiting privileges, classification, education, training, employment, care, and custody for all persons committed to correctional facilities.

**HISTORY:** P.L. 1976, ch. 290, § 1; P.L. 1998, ch. 441, § 27.

**NOTES:**
REENACTMENTS. The 1998 Reenactment (P.L. 1998, ch. 441, § 1) redesignated the subdivisions and substituted "misconduct" for "conduct" in subdivision (15).

CROSS REFERENCES.
Parole release criteria, duties of director of department of corrections, § 13-8-14.

NOTES TO DECISIONS

COMPILER'S NOTES.
Many of the annotations appearing below are to cases decided under repealed provisions of title 13 which were to some extent embodied in the enactment of this section.
Analysis

1. Release of Inmate on Civil Process.
2. Custody.
3. Treatment of Inmates.
4. Escape of Prisoner.
5. Liberty of Jail Yard.
0.5. Authority.
6. Transfer of Minor Inmates.
7. Requiring Involuntary Overtime by Officers.
8. Rules and Regulations.
9. Construction with Other Statutes.

1. RELEASE OF INMATE ON CIVIL PROCESS.
If one is imprisoned under a sentence of the law, no officer can take him from such imprisonment on civil process. *In re Harriott, 18 R.I. 12, 25 A. 349 (1892).*

2. CUSTODY.

Custody does not require physical force. *State v. McInerney, 53 R.I. 203, 165 A. 433 (1933).*

Failure of a guard to notice the escape for a period would not constitute an abandonment of his custody, for custody of a prisoner is not abandoned until his sentence is completed or he is pardoned, and therefore the defendant would be criminally liable for the escape. *State v. McInerney, 53 R.I. 203, 165 A. 433 (1933).*

3. TREATMENT OF INMATES.

Since all policies, practices and administrative procedures are set by and are under the control of the director of the department of corrections, and since he set no policies to safeguard inmates against unconstitutional conduct on the part of his subordinates, he had to be held responsible. *Ferola v. Moran, 622 F. Supp. 814 (D.R.I. 1985).*

4. ESCAPE OF PRISONER.

Whatever may be the conduct of the jailer, the prisoner cannot shield himself therewith from the charge of escaping custody, if he leaves the place of his confinement. *State v. McInerney, 53 R.I. 203, 165 A. 433 (1933).*

5. LIBERTY OF JAIL YARD.

In granting to persons imprisoned the liberty of the jail yard, the keeper of the jail is exercising an administrative function. *Sullivan v. Davis, 38 R.I. 382, 96 A. 216 (1916).*

If the keeper grants liberty of the jail yard to one not enumerated in § 10-12-1, he has exceeded his authority and permitted an escape for which he would be liable on his bond. *Sullivan v. Davis, 38 R.I. 382, 96 A. 216 (1916).*

0.5. AUTHORITY.

Director of the Rhode Island Department of Corrections derives his authority to impose discipline pursuant to *R.I. Gen. Laws § 42-56-10. State Dep't of Corr. v. R.I. Bhd. of Corr. Officers, -- A.2d --, 2003 R.I. LEXIS 35* (R.I. Feb. 3, 2003).

6. TRANSFER OF MINOR INMATES.

The power to transfer inmates to any other institutions for better care of such person is held to include minor inmates transferred to adult correctional institutions. *Long v. Langlois, 93 R.I. 23, 170 A.2d 618 (1961).*

The transfer of minor inmates to an adult correctional institution, where the assistant director believed such transfer would serve the purpose of reforming such inmates, did not interfere with any constitutional right. *Long v. Langlois, 93 R.I. 23, 170 A.2d 618 (1961).*

7. REQUIRING INVOLUNTARY OVERTIME BY OFFICERS.

The director may properly require officers to work involuntary overtime. *Vose v. Rhode Island Bhd. of Correctional Officers, 587 A.2d 913 (R.I. 1991).*

A collective bargaining agreement which limits the director to ordering involuntary overtime only in "emergencies" is invalid because it is an improper attempt to contractually restrict the director's statutory powers. *Vose v. Rhode Island Bhd. of Correctional Officers, 587 A.2d 913 (R.I. 1991).*

8. RULES AND REGULATIONS.

There is no constitutional requirement that a penitentiary promulgate prison rules and regulations concerning free speech. *Nicholson v. Moran, 835 F. Supp. 692 (D.R.I. 1993).*

9. CONSTRUCTION WITH OTHER STATUTES.

Although § 28-29-1 empowers an arbitrator to modify a penalty imposed by an employer, unless the parties agree in writing that he should have no such authority, that statute must be harmonized with those provisions set forth in this section, which outlines the powers of the director of the *Department of Corrections. State of Rhode Island Dept. of Corrections v. Rhode Island Brotherhood of Correctional Officers, 725 A.2d 296 (R.I. 1999).*

Where an arbitrator determined there was just cause for disciplinary measures, but substituted his judgment of what the proper disciplinary action should be for that of the director of the Department of Corrections, the trial court correctly determined that the legislature did not intend that the paramount disciplinary function of the director should be subject to the caprice of an arbitrator. *State of Rhode Island Dept. of Corrections v. Rhode Island Brotherhood of Correctional Officers, 725 A.2d 296 (R.I. 1999).*

*R.I. Gen. Laws § 28-9-1* allows employers' penalties in disciplinary matters to be modified by an arbitrator, but an arbitrator lacked the authority to modify the decision of the Director of the Rhode Island Department of Corrections

(DOC) to terminate a correctional officer because § 28-9-1 had been harmonized with *R.I. Gen. Laws § 42-56-10(2)* and (7) (1956) to preclude the disciplinary decisions of the Director from being usurped by arbitrators. Once the arbitrator found that the officer had violated DOC policy, the arbitrator could not then modify the punishment given to the officer by the *Director. State Dep't of Corr. v. R.I. Bhd. of Corr. Officers, -- A.2d --, 2003 R.I. LEXIS 35* (R.I. Feb. 3, 2003).

Director of the Rhode Island Department of Corrections, unlike other agencies affected by *R.I. Gen. Laws § 28-29-1*, is not in the position to delegate disciplinary functions to an arbitrator, as the discipline of employees in a correctional facility is a highly specialized function of the Director; the Director, alone, must decide disciplinary actions in correctional facilities, and in harmonizing *R.I. Gen. Laws § 42-56-10(2)* and (7) with *R.I. Gen. Laws § 28-9-1* it is the intent of the legislature to preserve the disciplinary functions of the Director over the broad powers given to arbitrators. *State Dep't of Corr. v. R.I. Bhd. of Corr. Officers, -- A.2d --, 2003 R.I. LEXIS 35* (R.I. Feb. 3, 2003).

Arbitrator acting pursuant to *R.I. Gen. Laws. § 28-9-1* did not have the authority to alter the discipline imposed by the director of corrections; the disciplinary powers of the director under this section could not be bargained away. *State v. R.I. Bhd. of Corr. Officers, 819 A.2d 1286, 2003 R.I. LEXIS 94 (R.I. 2003).*

Arbitrator impermissibly substituted his judgment for that of the Department of Corrections in regard to the Department terminating an employee, since, while the Department lacked a specific policy prohibiting the use of the towels and linens, that did not equate with permission to remove them from departmental premises. *Dep't of Corr. v. R.I. Bhd. of Corr. Officers, 867 A.2d 823, 2005 R.I. LEXIS 38 (R.I. 2005).*

COLLATERAL REFERENCES. Right of state prison authorities to administer neuroleptic or antipsychotic drugs to prisoner without his or her consent -- state cases. *75 A.L.R.4th 1124.*