UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

RICHARD MOREAU            :
                          :
       v.                 :        C.A. No. 04-459S
                          :
STATE OF RHODE ISLAND,    :
et al.                    :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Before the Court is the Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, filed on behalf of Defendants Barbara Carroll ("Carroll") and Marilyn Hale ("Hale"), Registered Nurses at the Adult Correctional Institutions ("ACI"); Joseph Marocco ("Marocco"), the Associate Director of Health Care Services at the ACI, and the State of Rhode Island Department of Corrections ("RIDOC"). (Document No. 97). This matter has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). A hearing was held on October 2, 2006. After listening to the arguments presented, reviewing the memoranda submitted by the parties and performing independent research, I recommend that Defendants' Motion for Summary Judgment (Document No. 97) be GRANTED in part and DENIED in part.

### Facts and Travel

On or about January 22, 2000, Plaintiff was committed to the ACI to serve a substantial period of incarceration. First Amended Complaint, ("FAC") ¶ 15. Plaintiff alleges that, upon his

incarceration, Defendants knew or should have known that he suffered from hydrocephalus – a buildup of excess cerebrospinal fluid within the brain. FAC ¶ 16. Plaintiff also alleges that in March 2000, Defendants knew, or should have known, that his vision was "20/40" in each eye. FAC ¶ 18.    In September of 2001, Plaintiff became concerned with his eyesight and submitted a request for medical attention. FAC ¶ 20-21. Specifically, on September 17, 2001, Plaintiff sent a letter to Marocco complaining about his eyesight. That letter states in part,

> [b]ack in 1996 I discovered I needed glasses. While at a job fair they tested my vision utilizing a book of various colored dots in a circle to make a number- some 2-digit numbers I could not identify so they suggested I see an eye physician. They tell me I am colored blind. Prescription glasses did correct it....Just recently I noticed my eyes are worse. My glasses don't work....I need to see [the eye doctor] desperately to have it corrected. This time I am willing to buy my own eyeglasses.

Document No. 97, Ex. G. Plaintiff alleges that he was examined on September 26, 2001 and that he conveyed "certain concerns" regarding his eyesight to Defendants. FAC ¶ 25. Also on September 26, 2001, Marocco sent a letter in reply to Plaintiff's September 17, 2001 letter, which noted that Plaintiff was scheduled to be examined by the eye doctor on October 29, 2001, at the doctor's next scheduled visit. Document No. 97, Ex. H.

The following day, September 27, 2001, Plaintiff replied to Marocco's letter, stating that he was concerned that the eye doctor would not be able to examine him on October 29, 2001 due to the number of people scheduled to see the doctor on that day, and noted that he had "$100 set aside to buy new eyeglasses." He further stated, "[a]lso please note that this is not a complaint about your staff. I want you to know the staff is very good." Document No. 97, Ex. M. Plaintiff alleges that, by October 29, 2001, his vision deteriorated to the point of legal blindness. FAC ¶¶ 34-35.

In this Motion, Defendants claim they are entitled to summary judgment on the two remaining counts. Count I is a claim against the State of Rhode Island for negligence and professional malpractice, and Count III is a claim against the named Defendants in their individual and official capacities as employees of the State of Rhode Island pursuant to 42 U.S.C. § 1983 to redress alleged violations of the Eighth Amendment to the United States Constitution.

## Discussion

### A.  Standard of Review

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); and Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is

"genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514-2515, 91 L. Ed. 2d 202, (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve...." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

### B.     Count I

Count I alleges negligence and professional malpractice in connection with the care Plaintiff received. Plaintiff claims that "Defendants(s) did fail to provide the Plaintiff with reasonably prudent ordinary care." FAC ¶ 37. Plaintiff claims he suffered permanent blindness as a direct and proximate result of the negligence of Defendants. Id. ¶ 39.

In their Motion for Summary Judgment, Defendants present two arguments: first, they claim that the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. §1997e(a), bars the negligence

claim because Plaintiff failed to exhaust his administrative remedies. Second, Defendants claim that Plaintiff simply failed to meet his burden in proving his negligence claim.

The Court first considers the PLRA/exhaustion argument. In their Motion, Defendants broadly argue that, "failure to exhaust is fatal to the entirety of [Plaintiff's] Complaint." Document No. 97 at 7. At the hearing on the Motion, however, Defendants' counsel conceded he was, "not sure if the failure to exhaust knocks out the negligence claim or not." This Court has reviewed the language of the PLRA and applicable case law, and finds that the PLRA does not require exhaustion of administrative remedies as a prerequisite to this state law negligence claim.

The PLRA states, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, <u>or any other Federal law</u>, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." (emphasis added). As is made clear by the plain language of the statute, the PLRA requires exhaustion prior to commencing a <u>federal</u> claim. Count I is a negligence claim, however, which is a pure state-law claim. <u>See</u> <u>Torres v. Corrs. Corp. of Am.</u>, 372 F. Supp. 2d 1258, 1263 (N.D. Ok. 2005) (stating that "[defendant's] state law claim of negligence does not fall within the ambit of § 1997e(a). Therefore, dismissal of the negligence claim under that provision would be improper.") Based on the language of the PLRA and applicable case law, the exhaustion provision of the PLRA simply does not apply to Count I, a state-law negligence claim.

The second argument presented by the State is simply that, based on the undisputed facts, there is "no genuine issue of material fact as to negligence" and that summary judgment should be granted. Defendants do not develop this argument or point the Court to any specific failure of the Plaintiff in his proof. In his Objection, Plaintiff notes that his expert witness specifically found that

the care received by Plaintiff fell below the "minimum standard of care called for under the circumstances." See Document No. 110, Attachment 10. Although Defendants had no obligation under Rule 56(c) to aver anything more than an absence of evidence to support Plaintiff's claim, Defendants risked, in making such a limited argument, that Plaintiff would rebut the Motion by identifying evidence of a genuine issue of material fact. By pointing the Court to the testimony of their expert and other underlying evidence, Plaintiff presented adequate evidence, pursuant to Fed. R. Civ. P. 56(d), to establish the existence of a trialworthy issue concerning the negligence/ malpractice claim. For this reason, I recommend that the Motion for Summary Judgment be DENIED as to Count I.

    **C.    Count III**

Count III alleges a violation of the Eighth, Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 2 of the Rhode Island Constitution. In their Motion, Defendants characterize Plaintiff's claim as an Eighth Amendment claim, and at the argument on the Motion, Plaintiff's counsel conceded that it is "primarily an Eighth Amendment claim" and he has offered no legal support for any alternative constitutional theories. In support of their Motion, Defendants argue that there is an absence of evidence to support the Eighth Amendment claim, that the PLRA's exhaustion requirement bars this claim, and that the claims against the Defendants in their official capacities should be dismissed on the basis of Eleventh Amendment sovereign immunity.

Plaintiff has brought this action under 42 U.S.C. § 1983. Section 1983 provides, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Section 1983 creates a cause of action for persons who are denied a federally protected right. See, e.g., Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations).

The Court first considers Defendants' argument that, "Moreau's constitutional claims for monetary damages cannot be brought against the State or State officials acting in their official capacities." Document No. 97 at 7. The Eleventh Amendment to the United States Constitution generally prohibits a state from being sued in federal court. It provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. While its plain language does not apply to suits in federal court brought by a citizen against a citizen's own state, the Supreme Court has long interpreted the Eleventh Amendment to extend to such suits. See Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 99 (1984) (finding Eleventh Amendment deprives the federal courts of subject matter jurisdiction over an action asserted by an individual against a state).

Pursuant to the Supreme Court's holding in Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989), a "state" or a "state official" acting in his or her official capacity is not a "person" as the term is used in 42 U.S.C. § 1983. Id. at 71. Thus, a state or state official acting in his official

capacity is generally not a proper defendant to a §1983 damages action. In this case, however, the individual Defendants were named in both their official and individual capacities. Eleventh Amendment immunity does not prohibit a damages action against a state official in their individual capacity. On the basis of the Eleventh Amendment, however, the damages claims against the individual Defendants in their official capacities and against the RIDOC, a department of state government, are not cognizable, and the Court recommends that summary judgment be GRANTED as to those claims. The damages claims against the individual Defendants in their individual capacities, however, are not barred by the Eleventh Amendment.

Turning next to the substance of the Eighth Amendment claims, the initial inquiry in a Section 1983 action is (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprived the plaintiff of a constitutional right or a federal statutory right. Gomez v. Toledo, 446 U.S. 635, 640 (1980). Here, there is no dispute that the Defendants acted under the color of state law. However, there is a question of whether the facts alleged rise to a violation of the Plaintiff's Eighth Amendment protection against cruel and unusual punishment.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Cruel and Unusual Punishments Clause was designed to protect those convicted of crimes, and can limit the type of punishment that is imposed. Ingraham v. Wright, 430 U.S. 651, 664 (1977). After an individual is incarcerated, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 318-319 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the

Cruel and Unusual Punishments Clause...." Id. "The general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should also be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." Id. at 320. What is required to establish the unnecessary and wanton infliction of pain varies according to the nature of the alleged Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

As mentioned above, Defendants allegedly delayed and denied medical treatment to Plaintiff resulting in his legal blindness. The failure to provide medical attention to an injured prisoner can constitute an Eighth Amendment violation. See, e.g., Layne v. Vinzant, 657 F.2d 468 (1st Cir. 1981); Rosen v. Chang, 758 F. Supp. 799 (D.R.I. 1991). In order to state an Eighth Amendment claim for delayed or denied medical care, an inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976). In this context, "deliberate indifference" means "'wanton' decisions to deny or delay care...'requiring actual knowledge of impending harm, easily preventable.'" Feeney v. Corr. Med. Serv., Inc., 464 F.3d 158, 162 (1st Cir. 2006) (citing Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)). Moreover, "treatment substandard, even to the point of malpractice, is not the issue...[t]he care provided must have been so inadequate as to shock the conscience." Id. (internal quotations omitted). Officials must "intentionally" delay or completely deny access to medical care. Estelle, 429 U.S. at 104-05.[1] Deliberate indifference requires a state of mind akin to criminal recklessness; that the official knew of and consciously disregarded a substantial risk of serious harm. See Farmer

---

[1] In Count III, Plaintiff, a convicted child molester, "specifically" alleged that Defendants' conduct in denying medical treatment to him "was done due to the nature of the charges for which he was convicted." FAC ¶ 51. However, at the hearing, Plaintiff's counsel conceded that he had no evidence to support this allegation or a finding of malice.

v. Brennan, 511 U.S. 825 (1994); Mahan v. Plymouth County House of Corr., 64 F.3d 14 (1st Cir. 1995); and Kogut v. Katz, 187 F.3d 622 (1st Cir. 1998).  Deliberate indifference to the medical needs of an inmate amount to an Eighth Amendment violation only when the needs of the inmate are serious.  Hudson, 503 U.S. at 9.

The seriousness of an inmate's injuries are measured objectively.  Wilson, 501 U.S. at 298. "A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  Mahan, 64 F.3d at 18 (quoting Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir 1990)).

Here, Plaintiff alleges that Defendants delayed his medical treatment after receiving written requests for medical attention.  Defendant Marocco is the Associate Director of Health Care Services at the ACI, and was the recipient of letters from Plaintiff which complained of his poor eyesight. The letters written to Marocco clearly stated that his vision was failing and also indicated Plaintiff's belief that new eyeglasses would remedy that problem.  See Document No. 97, Exs. G and M.  In his September 17, 2001 letter, Plaintiff details when he first discovered he needed new glasses, and also notes that he is "willing to buy [his] own eyeglasses," and in the October 14, 2001 letter, Plaintiff notes, "I have $100 set aside to buy new eyeglasses."  Even though Marocco had knowledge of Plaintiff's hydrocephalus, Plaintiff characterized his eyesight problem as one related to eyeglasses, therefore it was not necessarily obvious to a layperson that a doctor's attention would be immediately required.  Plaintiff never stated or suggested that his deteriorating eyesight might be linked to his medical condition.

-10-

Marocco promptly replied to Plaintiff's letters and scheduled his appointment with the eye doctor at his next scheduled visit. Marocco's interactions with Plaintiff, although potentially negligent, fall far below the "deliberate indifference" standard which triggers Eighth Amendment liability. There is absolutely no evidence that Marocco consciously disregarded a substantial risk of serious harm to Plaintiff. To the contrary, a fair reading of Plaintiff's letters is that his current glasses were insufficient and he needed a new pair of prescription eyeglasses. The evidence set forth against Marocco is insufficient to permit the Eighth Amendment claim to proceed against him in his individual capacity.

Turning next to Nurse Carroll, there is also a lack of evidence that she acted with deliberate indifference in her treatment of Plaintiff. Nurse Carroll conducted a physical exam of Plaintiff on September 26, 2001. Document No. 97, Ex. L. Although she did not conduct an eye exam, she did discuss with Plaintiff the results of his eye exam, and she made a notation recommending that he see an optometrist. Id., Ex. K. Plaintiff states that Nurse Carroll testified that vision complaints were typically handled in a five-day period. Plaintiff alleges that "a mistake or deviation below [Nurse Carroll's] stated minimum 5 day referral would have catastrophic effects when the complaint is vision related." Pl.'s Opp. at 17. Plaintiff also notes that "[h]er conduct consisted of failing to make a medical record indicating any priority." Id. at 16. Reviewing the evidence presented by Plaintiff and Defendants as to Nurse Carroll, there are no genuine issues of material fact present as to Count III. The facts alleged simply do not indicate that Nurse Carroll was responsible for "unnecessary and wanton infliction of pain" under the Eighth Amendment. Nurse Carroll did not act with deliberate indifference when she conducted the physical and reviewed Plaintiff's eye examination with him, and her determination not to seek emergency treatment for Plaintiff under the

circumstances known to her at the time, although potentially negligent, did not "shock the conscience."

Finally, Nurse Hale appears to have had only minimal, routine contact with Plaintiff. Nurse Hale conducted an examination of Plaintiff on December 24, 2001, related to a complaint of dizziness. Document No. 97, Ex. O. There are no facts indicating that Nurse Hale denied or delayed any treatment to Plaintiff, nor that she acted with deliberate indifference in providing care to him. Plaintiff states that Nurse Hale is "representative" of a nurse that would have taken further action with respect to the slip of Nurse Carroll. Document No. 109 at 17. Plaintiff also states that in lieu of Nurse Hale, "substitution of 'Jane Doe' is probably appropriate." Id. However, Plaintiff has not set forth any facts against the potential Jane Doe Defendant that would rise to the level of an Eighth Amendment violation. Accordingly, I recommend that Defendants' Motion for Summary Judgment as to Count III be GRANTED and that the claims against all of the Defendants in their individual capacities be DISMISSED.

Because the Court concludes that there are no disputed issues of material fact and that judgment can be rendered as a matter of law on the merits of Count III, the Court need not even reach the argument that Plaintiff failed to exhaust his administrative remedies under the PLRA.

**Conclusion**

For the foregoing reasons, I recommend that Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Document No. 97) be DENIED as to Count I and GRANTED as to Count III in its entirety. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the

right to review by the District Court and the right to appeal the District Court's decision.  See <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
October 31, 2006