**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RICHARD MOREAU | ) | |
| | ) | |
| VS. | ) | C.A. No: 04-459S |
| | ) | |
| STATE OF RHODE ISLAND, et. al. | ) | |

**PLAINTIFF'S PARTIAL OBJECTION TO THE OCTOBER 31, 2006 REPORT AND RECOMMENDATION**

**NOW** comes the Plaintiff, Richard Moreau, pursuant to Local Rule of Civil Procedure (LR Cv) 72(d), and objects to the Report and Recommendation (Document #121) issued by the Magistrate Judge on October 31, 2006.

In further support of said objection, Plaintiff incorporates by reference herein "Plaintiff's Memorandum of Law in Support of Partial Objection to the October 31, 2006 Report and Recommendation."

**WHEREFORE**, Plaintiff requests judgment not enter pursuant to the Report and Recommendation.

Plaintiff,
By Counsel,

/s/ Joseph-Anthony DiMaio, Esq.

Joseph-Anthony DiMaio, Esq. (#3910)
Mckinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655
(401) 722-9160
contact@mckinnonharwood.com

**CERTIFICATION**

I hereby certify that on Thursday, November 09, 2006, a true copy of the within, was served upon the following and in the following manner(s):

**Thomas A. Palombo Esq.**, by electronic means only to " tpalombo@riag.ri.gov".

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RICHARD MOREAU | ) | |
| | ) | |
| VS. | ) | C.A. No: 04-459S |
| | ) | |
| STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, ASHBEL T. WALL, DIRECTOR, JAMES WEEDEN, WARDEN, JOSEPH MAROCCO, ASSOCIATE DIRECTOR OF HEALTH CARE, SCOTT ALLEN, MD, DR. SMILEY, BARBARA A. CARROLL, RN, MARYLYN GREJUDUS, RN, JOHN DOE (1), JOHN DOE (2), JOHN DOE (3) | ) | |

**PLAINTIFF'S, MEMORANDUM OF LAW IN SUPPORT OF PARTIAL[1] OBJECTION TO THE OCTOBER 31, 2006 REPORT AND RECOMMENDATION**

**NOW** comes the Plaintiff, Richard Moreau, and in support of his partial objection to the Report and Recommendation ("R&R") issued on October 31, 2006 by the Magistrate Judge (Document #121), files this memorandum of law and in further support incorporates by reference the transcript of said hearing pursuant to LR Cv 72[2].

Plaintiff specifically objects to grant of summary judgment regarding Count III of Plaintiff's First Amended Complaint ("FAC") against the defendants in their individual capacity. Plaintiff however does not object to the report and recommendation as it pertains to Denial of the Motion for

[1] Review and decision regarding Plaintiff's Objection to the Report and Recommendation dismissing Count II of FAC is still pending.

[2] Transcript was requested on November 2, 2006 (Document #122) and was not available at the time of filing of this memorandum.

Summary Judgment regarding Count I of FAC, and further does not object to grant of Summary Judgment regarding Count III of FAC against the defendants in their official capacity.

**LAW:**

In determining a motion for summary judgment, Rule 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCS Fed Rules Civ Proc R 56(c).

"In determining whether summary judgment is proper, a court ordinarily must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party. Harlow v. Fitzgerald, 457 U.S. 800, 816 (U.S. 1982).

**ARGUMENT:**

The basis for Plaintiff's objections is as follows:

**Objection to grant of Marocco's Motion for Summary Judgment:**

The Magistrate overlooked material evidence regarding Marocco's liability. The R&R's reasoning for grant of summary judgment in favor of Morocco is on an erroneous finding of "...no evidence that Marocco consciously disregarded a substantial risk of serious harm." (Document 121, pg. 11). This just is not true.

But for Marocco's deposition, it was argued at hearing, Plaintiff may have voluntarily dismissed Count III against Mr. Marocco. The R&R makes no mention of Marocco's deposition testimony which was referenced in Document #110. His testimony establishes several facts. The following facts established by Plaintiff's Fourth Statement of Disputed and/or Undisputed Facts ("FSOF" (Document #110)) were not commented upon in the R&R:

- **Marocco knew blindness was a complication associated with hydrocephalus**. Mr. Marocco's subjective state of mind was interrogated regarding his knowledge of the complications of hydrocephalus, and Mr. Marocco acknowledged that blindness was a complication of Plaintiff's condition (Document #110; FSOF ¶32);
- Mr. Marocco had just corresponded with the Plaintiff within the year ("Exhibit O" to FSOF; Document #110 Attachment 15) and thereby had acknowledge that Plaintiff was afflicted with hydrocephalus;
- Mr. Marocco did not presume Plaintiff knew that blindness was a complication, stating "I don't expect any inmate to understand the complexities of his or her condition. That's why we have nurses that are on site to evaluate inmates, and we have physicians available 24/7 to take that evaluation into consideration and make a decision whether somebody needs to be treated or not." (FSOF ¶2(c)(xiii)));
- Marocco knew he had the authority and ability to transfer Moreau to whichever facility the optometrist was visiting on any given week as evidenced by his own memorandum. (FSOF ¶61; Attachment 18)
- But for Mr. Marocco interceding through his call to an unidentified nurse (Attachment 17 to Document #110; "Exhibit Q" to FSOF), Mr. Moreau may have

seen an optometrist closer to the five-day period Barbara Carroll identified (FSOF ¶38).

Further, Mr. Marocco should not benefit from the spoliation issue created by the discarded medical request slips (a/k/a "KITE"). Mr. Marocco had specific knowledge from Mr. Moreau's September 17, 2001 letter (Attachment 28 to Document #110) that at least one slip, if not more, was submitted which would have alerted the medical staff to a serious vision problem. Mr. Marocco should not benefit from the spoliation issue, particularly since by virtue of the September 17, 2001 letter (Attachment 28 to Document #110; FSOF ¶64 Exhibit "AB"), Marocco was placed on notice that at least one slip had been submitted and that a desperate time issue and/or delay already worried the Plaintiff and subjected the Plaintiff to oral reprimand in his job as an outside porter.

By virtue of the above facts, Mr. Marocco's deliberate indifference is well established. Instead of taking steps that may have corrected the delay that gave rise to the September 17, 2001 letter, Mr. Marocco took affirmative steps to compound and prolong Mr. Moreau's delay and effective denial of appropriate medical attention. Each and every action taken by Marocco required some degree of cognition and was followed by a specific conduct, as opposed to inadvertence. Mr. This distinction is one of malfeasance versus misfeasance. In lieu of expediting referral to an eye doctor, Marocco attempts to disavow any responsibility for making a medical decision that changed the normal 5-day examination/treatment referral which would have saved the Plaintiff's vision. Marocco can not possibly be found a mere "layperson" (R&R, pg 10) given Mr. Marocco's own understanding of the complications of hydrocephalus or the institutional 5-day referral period for vision complaints. Marocco's conduct is a gross deviation of the scope of his of employment and constitutes deliberate indifference.

**Objection to grant of Barbara Carroll's Motion for Summary Judgment:**

Likewise, the R&R overlooks material evidence regarding Barbara Carroll's liability. But for Nurse Carroll's deposition testimony, it too was argued at hearing that Plaintiff may have otherwise voluntarily dismissed Count III against her. The R&R makes no mention of Nurse Carroll's deposition testimony or the subjective importance she placed on the risk of all vision complaints, regardless of an understanding of hydrocephalus, and regardless of the importance of writing her order on the Physician's Order sheet or some other manner which could have effectively communicated her intention that Mr. Moreau be examined by an eye doctor.

The R&R's reasoning for grant of summary judgment in her favor of is passed upon in a single brief paragraph and is void of any substantive analysis of her deposition testimony. She acknowledged that "[n]obody should have to go blind" (Document #110 ¶39). In addition, she affirmed her appreciation of risk to Mr. Moreau by memorializing the need for an examination by an eye doctor (Document #110 ¶44). Despite her own subjective understanding and appreciation that Mr. Moreau had a vision complaint, that nobody should go blind, and that vision complaints would get sent to the eye doctor within five (5) days (Document #110 ¶38), her conduct reflects a complete abandon of protocol which she acknowledged.

The subjective statement that "there should be nobody go blind, nobody" (Document #110 ¶39; Attachment 20) alone supplies adequate evidence of Nurse Carroll's cognitive reflection to survive a summary judgment. Her conduct and disregard of protocol in light of that cognition only further supports a finding of deliberate indifference to the serious risk which she acknowledged under oath.

Nurse Carroll acknowledges the protocol during her testimony when specifically asked how she communicated her order for treatment with the eye doctor. Contrary to her actual

conduct, under oath she indicated that her order would be on the doctor's order sheet (Document #110 ¶43; also ¶42; see Attachment 20, pg 144, ln7). Her failure to make an appropriate order as required by her own testimony and as required by Policy 18.37 (Document #110 ¶40, Attachment 21) is evidence of her cognitive deliberate indifference.

Moreover, while Nurse Carroll testified that her "see D.O." referral notation on the examination form (Document #110, Attachment 24) was "extra" (Document #110 ¶44), Plaintiff pointed out that the supposed "extra" notation was placed on such an area of the examination form so as to intentionally obscure the "plan," "problem," or "priority" intended by the design of the form and intended by her own treatment notation memorialized on that exhibit (Document #110, Attachment 24). Placement of the referral notation did not comply with the directive contained in Policy 18.37 (Document #110, Attachment 21) regarding orders (Document #110 Attachment 21)

Accordingly, the R&R misplaces Plaintiff's argument regarding Nurse Carroll's liability. Plaintiff did not complain that an emergency referral should have been made on a same day basis, only that the protocol Nurse Carroll acknowledged should have been followed was not followed. The knowing failure to follow that protocol in light of the admitted risk of blindness acknowledged by Nurse Carroll establishes deliberate indifference to that serious risk. Plaintiff need not prove a wicked intention, just deliberate indifference to a serious risk of harm and resulting damages. A wicked intention only potentially inflames the damages.

**Objection to grant of Nurse Hale's Motion for Summary Judgment:**

Nurse Hales is representative of the unknown nurse or nurses which either existed, or not, and which either spoke with the Health Care administrator on September 26, 2001 and failed to

advise of the 5-day protocol, or failed to follow a direct order by Nurse Carroll to make an eye doctor appointment for Mr. Moreau. If Nurse Carroll argues that she made an appropriate order for an eye doctor, then liability must fall on the nurse whose failed to perform the ministerial function of executing that order. Such failure constitutes deliberate indifference.

It is too easy to hide deliberate indifference in a closet of multiple layers of anonymity. Unless the Defendants are able to identify the nameless staff nurses whose function was to execute orders, and perform ministerial functions, then Nurse Hale, a/k/a "Jane Doe" should be subjected to constitutional scrutiny at trial.

**The Prison Litigation Reform Act (PLRA):**

The Magistrate did not rule on the applicability of the PLRA (Prison Litigation Reform Act) since an alternative basis was found for dismissal of Count III. Plaintiff therefore incorporates by reference herein those portions of Plaintiff's Memorandum of Law in Support of his Objection to Motion for Summary Judgment (Document #109) that pertains to the PLRA. Plaintiff has submitted *inter alia* that, either the Prison Litigation Reform Act does not apply, or the Plaintiff has complied with its requirements (Document #109 pg 3-7), and therefore Summary Judgment should be denied on that basis as well.

**WHEREFORE**, the Report and Recommendation should be disregarded with respect to the Count III dismissal of individual liability for Mr. Marocco, Barbara Carroll, and Nurse Hale. However, Plaintiff does not object to grant of summary judgment regarding dismissal of Count III against the defendants in their official capacity. Further, the Magistrate's R&R regarding denial of summary judgment on Count I of Plaintiff's First Amended Complaint should be affirmed.

Plaintiff,
By Counsel,

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio, Esq. (#3910)
Mckinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655
(401) 722-9160
contact@mckinnonharwood.com

**CERTIFICATION**

I hereby certify that on Thursday, November 09, 2006, a true copy of the within, was served upon the following and in the following manner(s):

**Thomas A. Palombo Esq.**, by electronic means only to " tpalombo@riag.ri.gov".

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio