**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**RICHARD MOREAU**
**PLAINTIFF**

**V.** **C.A. NO. 04-459 S**

**STATE OF RHODE ISLAND, ET AL.**
**DEFENDANTS**

**DEFENDANTS' RESPONSE TO PLAINTIFF'S PARTIAL OBJECTION TO REPORT AND RECOMMENDATION**

## INTRODUCTION

The instant Defendants,[1] State of Rhode Island, Department of Corrections, Joseph Marocco, Barbara Carroll and Marilyn (formerly, Grejudus) Hale, hereby respond to Plaintiff, Richard Moreau's, Partial Objection to the Report and Recommendation ("R & R") dated October 31, 2006 filed by Magistrate Judge Lincoln D. Almond. For the reasons set forth, and as fully supported by the Memorandum in Support of Summary Judgment, Statement of Undisputed Facts ("SUF") and Affidavit, Defendants respectfully request that the Honorable Court adopt the Report and Recommendation and grant summary judgment on Plaintiff's Complaint, Count III - Constitutional Deprivations.

## FACTS AND TRAVEL

Moreau's Complaint avers Count I - Negligence and Professional Malpractice; Count II - Violation of Open Records Statute and Count III - Constitutional Deprivations. Moreau alleges, *inter alia*, that he lost his vision while incarcerated and became legally blind. He asserts this was caused by Defendants unconstitutional acts and omissions, and by their negligence.

---

[1] Defendants, Director A.T. Wall and Warden James Weeden have filed a separate Motion for Summary Judgment (Docket No. 81). Moreau also named "John Doe" doctor, guard and staff; however, no individual was ever identified or served.

Based on the Federal constitutional claim, Defendants removed the case from the Superior Court. Extensive paper discovery and depositions followed. Thereafter, Defendants filed several motions to test various claims in Moreau's Complaint. Magistrate Judge Almond granted (Docket No. 77) Defendants' Motions for Certification and Substitution on Count I-Negligence (Docket Nos. 68-72). His Honor also filed a Report and Recommendation (Docket No. 107) for the grant of Defendants' Motion for Judgment on the Pleadings as to Count II - Violation of Open Records Statute (Docket No. 80) and the Motion for Summary Judgment filed by Defendants Wall and Weeden (Docket No. 81).

The instant Defendants, State, Marocco, Carroll and Hale, filed the present Motion for Summary Judgment on Counts I and III (Docket No. 97). A hearing was held on October 2, 2006.[2] On October 31, 2006, Almond, M. J. filed a Report and Recommendation (Docket No. 121) that summary judgment be granted as to Count III - Constitutional Deprivations and denied as to Count I - Negligence and Professional Malpractice. Presently before the Court is Moreau's Objection to the Report and Recommendation. (Docket No. 123.)[3]

## ARGUMENT

The centerpiece of Moreau's Federal claim is alleged cruel and unusual punishment violative of the Eighth Amendment. As Magistrate Judge Almond recognized, the Supreme Court has held that an inmate must evidence "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (Emphasis added.) His Honor also discussed the First Circuit's very recent Feeney v. Correctional Medical Services, Inc., 464 F.3d 158 (1st Cir. 2006), where the Court stated: "The obvious case would be a denial of needed

[2] The Hearing Transcript was ordered by Plaintiff and filed with the Court (Docket No. 124).
[3] The instant Defendants did not object to the recommended denial of summary judgment on Count I - Negligence and Professional Malpractice.

medical treatment in order to punish the inmate.[ [4] ] But deliberate indifference may also reside in 'wanton' decisions to deny or delay care, where the action is recklessness, 'not in the tort law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.'" Id. at 162. (citation omitted). As argued before the Magistrate Judge, an Eighth Amendment claim has both an objective component - "Was the deprivation sufficiently serious?" and a subjective component - "Did the officials act with a sufficiently culpable state of mind?" Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991). As to the subjective component, the Supreme Court has adopted "subjective recklessness as used in the criminal law…as the test for 'deliberate indifference' under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 839-49, 114 S.Ct. 1970, 1980 (1994). Moreover, Farmer held that:

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. … [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

511 U.S. at 837-38, 114 S.Ct. at 1979 (emphasis added).[5]

Likewise, the First Circuit has stated: "[i]n order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991) (emphasis added) (affirming judgment in a Section 1983 case alleging "deliberate indifference" in medical care).

---

[4] Moreau does allege that he was punished "due to the nature of the charges [child molestation] for which he was convicted." Complaint, ¶ 51. However, at the October 2, 2006 Hearing, Plaintiff's counsel conceded there is no evidence of such "malice." Transcript, 10-2-06, 27-28.

[5] The Farmer Court clearly distinguishes the common law of negligence, which "imposes tort liability on a purely objective basis." Id. (citing Prosser and Keeton §§ 2, 34, pp. 6, 213-14; 28 U.S.C. §§ 2671-2680; U.S. v. Muniz, 374 U.S. 150, 83 S.Ct. 1850).

"[W]here there is no evidence of treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional, or evidence of acts or omissions so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred, summary judgment is appropriate." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (internal quotations omitted) (summary judgment upheld in § 1983 "deliberate indifference" prison suicide case).

The Report and Recommendation fully considered each of the three instant Defendants,[6] in turn, and properly recommends that there is no genuine issue of material fact as to deliberate indifference and culpable state of mind, and that summary judgment should be granted.

As to Defendant Joseph Marocco, DOC's health care administrator, his correspondence from and to Moreau, his Answer to Interrogatory No. 13 and his Deposition testimony all support his understanding that Moreau was complaining about his vision because of his eyeglasses. SUF, ¶ 36 and 46; Exhibits G, H, I, J, M and N. Marocco was a health care administrator and not a medical professional. SUF, ¶ 37 and Exhibit J. Moreau's September 17, 2001 Letter to Marocco mentions eyeglasses and glasses six (6) times. SUF, ¶ 35; Exhibit G. Marocco wrote back to Moreau on September 26, 2001. Exhibit H. Marocco states that he spoke to a nurse at the Intake Services Center, that Dr. Smiley (the optometrist) was scheduled to be there on October 29, 2001, and that Moreau was on this list to see him at that time. Id. Marocco also wrote that if Moreau had any further questions, he should speak to a nurse. Id.

[6] It should be noted that there are no doctors or physicians named as defendants in this case. In fact, Moreau dismissed from suit both Dr. Scott Allen, DOC's former Medical Director and Dr. Harrison Smiley, the optometrist who saw Moreau at the Intake Services Center on October 29, 2001. Also, Dr. Francis Figueroa, the ophthalmologist who saw Moreau in November 2001, was removed as a named defendant in the First Amended Complaint. Moreover, the John Doe "unknown doctor" was never identified or sued.

Moreau wrote again to Marocco on October 14, 2001, stating that his eyesight was very bad, that it was very dark, and that he could read a newspaper, but just barely. SUF, ¶ 44 and 45; Exhibit M. He also wrote that he had $100.00 set aside to buy new eyeglasses. Id. Moreau further wrote that he understood he was on the October 29, 2001 list to see Dr. Smiley, but heard sometimes all on the list did not get seen, and wanted to be sure he was seen. Id. He also wrote that he had no complaint about the staff and that they were very good. Id.

Marocco received the October 14 Letter on October 25, 2001 and wrote back on November 5, 2001. SUF, ¶ 46. Exhibit M and N. Marocco wrote that he called the nurse at Intake Services Center, learned that Moreau has been transferred to High Security, and made arrangements for him to be to be transported back to Intake for the October 29, 2001 appointment with Dr. Smiley. Id. Moreau was seen by Dr. Smiley at the October 29 appointment. Id. Marocco wrote that if Moreau had additional concerns regarding his eyesight, he should let Marocco know. Id.

Marocco understood that Moreau was complaining about his vision because of his eyeglasses and took the steps appropriate under those circumstances. See above. Importantly, Moreau had stated to a DOC physician that he knew the signs of blockage and/or infection of his shunt and would alert medical staff if any of the symptoms occur. SUF, ¶ 30; Exhibit C. Applying the applicable legal standard, Marocco actions in this case, as described above, demonstrate no "deliberate indifference" and no "culpable state of mind."

As to Defendant Barbara Carroll, a nurse and physician extender, she had only one contact with Moreau, the September 26, 2001 physical examination. SUF, ¶ 38-40; Exhibit K and L. Another nurse actually conducted Moreau's eye examination and Carroll discussed the eye exam with Moreau. Id. Carroll decided Moreau should see a Doctor of Optometry and

wrote a note to that effect on the Physical Examination form. Id. The next day, September 27, 2001, the form was reviewed and signed by a physician, Dr. Osei. Id. Carroll testified that if she thought Moreau was in an acute medical state she would have asked medical staff to transport him to the emergency room. SUF, ¶ 43; Exhibit L. Carroll's actions, as outlined above, show no "deliberate indifference" and "no culpable state of mind."

As to Defendant Marylyn Hale, her Interrogatory Answer No. 13 lists her contacts with Moreau. Exhibit O. The contacts can fairly be categorized as routine nursing. Id. On December 24, 2001, Hale responded to Moreau's reported dizzy spell. Id. Hale did not find Moreau dizzy, took his blood pressure and found it to be normal, and advised him to eat and drink, because he hadn't that day. Id. Hale's actions demonstrate no "deliberate indifference" and no "culpable state of mind."

The argument at the October 2, 2006 hearing before M.J Almond further supports the Report and Recommendation. As to Mr. Marocco, counsel argued:

> **Mr. Palombo:** Mr. Marocco's testimony in this case is that he understood that he was complaining about his eyeglasses and about an eyeglass problem. And when you look at the September 17th letter it mentions the word, eyeglasses or glasses 6 or 7 times. Based on that, he contacts the nurse at the facility and says he needs to see the optometrist, a doctor by the name of Harrison Smiley, who makes rounds throughout the buildings. This letter did not to Mr. Marocco, and this is his testimony, did not to Mr. Morocco present a loss of vision as an eye problem, but instead as an eyeglass problem. He may have been, he may have been wrong about that, frankly. This [also] ties into the … Eighth Amendment standard which we've both briefed in this case and we've both kind of argued. We've also both argued about the Farmer v. Brennan case, and I'm quoting just one sentence from Farmer v. Brennan, "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." And that's Farmer, 511 U.S., at 838. Transcript, 10-2-06, pp. 11-12.

Magistrate Judge Almond then posed a question distinguishing the negligence claim from the constitutional claim:

> **THE COURT:** So you're saying assuming he was wrong, assuming even he was possibly negligent in doing that, not admitting it, but assuming it you're saying that's not enough to establish an Eighth Amendment violation as a matter of law.
>
> **Mr. Palombo:** Correct, your Honor. Respectfully, we removed this case from Superior Court to the Federal Court because we wanted - - we knew that the Eighth Amendment was going to be the central focus of this case as well as the Qualified Immunity Doctrine. But we think the Eighth Amendment focus becomes [sic] first. When you look at the Eighth Amendment standard as created by the U.S. Supreme Court and by our First Circuit cases, the standard is extremely high. We need a culpable state of mind. We need subjective recklessness under the criminal law standard of recklessness. And we need to have an official, whereas here, if there was a significant risk that should have been perceived but was not perceived that may be negligence. I mean the the U.S. Supreme Court probably could have wrote that in there in Farmer v. Brennan, maybe that's negligence. But it's not the intentional infliction of punishment which is what's required for the Eighth Amendment standard.
> Transcript, 10-2-06, pp. 12-13.

## CONCLUSION

Magistrate Judge Almond's Report and Recommendation properly applied Eighth Amendment jurisprudence to the facts of this case. Based on the undisputed facts, as well as the written and oral arguments, His Honor concluded that "[t]here is absolutely no evidence that Marocco consciously disregarded a substantial risk of serious harm to Plaintiff." R & R at 11. As to Nurse Carroll, the court found that she "did not act with deliberate indifference when she conducted the physical and reviewed Plaintiff's eye examination with him, and her determination not to seek emergency treatment for Plaintiff under the circumstances known to her at the time, although potentially negligent, did not "shock the conscience." Id. at 11-12. Finally, the court stated that "[t]here are no facts indicating that Nurse Hale denied or delayed any treatment to Plaintiff, nor that she acted with deliberate indifference in providing care to him." Id. at 12.

Accordingly, Magistrate Judge Almond recommends that the constitutional claim be dismissed and that the negligence claim go forward. For the reasons set forth herein, and as fully supported by the Memorandum of Law in Support of Summary Judgment, Statement of Undisputed Facts and Affidavit, Defendants, State of Rhode Island, Department of Corrections, Joseph Marocco, Barbara Carroll and Marilyn Hale, respectfully request that the Honorable Court adopt the Report and Recommendation dated October 31, 2006 and grant summary judgment on Plaintiff Moreau's Complaint, Count III - Constitutional Deprivations.

Respectfully submitted,

DEFENDANTS
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

*/s/ Thomas A. Palombo*
____________________________

Thomas A. Palombo, Bar No. 4212
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2296
Fax: (401) 222-2995
tpalombo@riag.ri.gov

**CERTIFICATION**

I, the undersigned, hereby certify that I sent a true copy of the foregoing by electronic mail this 22nd day of November, 2006 to those indicated below:

*/s/ Thomas A. Palombo*
____________________________

**Joseph-Anthony DiMaio, Esquire**
contact@mckinnonharwood.com