**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RICHARD MOREAU | ) | |
| | ) | |
| VS. | ) | C.A. No: 04-459S |
| | ) | |
| STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, ASHBEL T. WALL, DIRECTOR, JAMES WEEDEN, WARDEN, JOSEPH MAROCCO, ASSOCIATE DIRECTOR OF HEALTH CARE, SCOTT ALLEN, MD, DR. SMILEY, BARBARA A. CARROLL, RN, MARYLYN GREJUDUS, RN, JOHN DOE (1), JOHN DOE (2), JOHN DOE (3) | ) | |

**PLAINTIFF'S MOTION IN LIMINE**
**REGARDING THE APPLICABILITY OF THE STATE TORT CAP (R.I.G.L.§9-31-2)**

**NOW** comes the Plaintiff in the above-entitled matter and for cause, moves this Honorable Court grant an order determining whether, as a matter of law, the State tort cap, R.I.G.L.§9-31-2, applies to limit the Plaintiff's potential recovery. In support of said motion, Plaintiff attaches his supporting memorandum of law.

Plaintiff,
By Counsel,

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio, Esq.
Attorney #3910
McKinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655

**CERTIFICATION**

I, the undersigned, do hereby certify that on Monday, February 26, 2007, I caused a copy of the within to be served upon **Thomas A. Palombo Esq.**, by electronic means only to "tpalombo@riag.ri.gov".

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RICHARD MOREAU | ) | |
| | ) | |
| VS. | ) | C.A. No: 04-459S |
| | ) | |
| STATE OF RHODE ISLAND, DEPARTMENT OF CORRECTIONS, ASHBEL T. WALL, DIRECTOR, JAMES WEEDEN, WARDEN, JOSEPH MAROCCO, ASSOCIATE DIRECTOR OF HEALTH CARE, SCOTT ALLEN, MD, DR. SMILEY, BARBARA A. CARROLL, RN, MARYLYN GREJUDUS, RN, JOHN DOE (1), JOHN DOE (2), JOHN DOE (3) | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW**
**SUPPORTING PLAINITFF'S MOTION IN LIMINE**
**REGARDING THE APPLICABILITY OF THE STATE TORT CAP (R.I.G.L.§9-31-2)**

**Travel:**

This matter involves certain facts and issues as further elaborated in the Plaintiff's Pre-trial Memorandum (Document #131). A trial calendar call was held on February 20, 2007. It was then directed[1] that a determination would be made *in limine* regarding the issue of whether the State Tort Cap would apply, if at all, to limit the Plaintiff's recovery.

[1] After discussion on the record, the court directed this matter to be placed on the April, 2007, trial calendar call, and further directed the Plaintiff to file the within motion and memorandum within one week, i.e. on or before Tuesday, February 27, 2007. Defendant's response, if any, is due one week thereafter, i.e. on or before Tuesday, March 6, 2007. It was further directed by the court that this matter would be referred to the Magistrate Judge for an initial report and recommendation, and that all other *in limine* motions, and other pre-trial issues would be handles in the normal course.

**Issue:**

Whether the Rhode Island State tort cap, Rhode Island General Law ("R.I.G.L.") §9-31-2, applies under these facts to limit the Plaintiff's recovery.

**Argument and Law:**

Private Function Test:

The State of Rhode Island is liable in all actions of tort in the same manner as a private individual or corporation subject to monetary limitations established by law. R.I. Gen. Laws § 9-31-1.[2] However, those monetary limitations do not apply when the State is engaged in a proprietary function. R.I. Gen. Laws § 9-31-2.

A proprietary function is one which is not "so intertwined with governing that the government is obligated to perform it only by its own agents or employees." Xavier v. Cianci, 479 A.2d 1179, 1182 (R.I. 1984). In 1982, there was "no question that **maintenance** of a correctional institution [was] a governmental function" (emphasis supplied) Saunders v. State, 446 A.2d 748, 751 (R.I. 1982), hence not a proprietary function. Saunders establishes the State's duty to protect inmates from violence at the hands of other inmates. In order to find liability in prison violence situations, Saunders imposes a special notice requirement, i.e. that certain dangerous propensities would likely give rise to an attack upon the victim inmate as a "specific identifiable victim or as a member of a group of identifiable victims." Id. Unfortunately, Saunders does not define the "maintenance" concept.

[2] "In any tort action against the state of Rhode Island or any political subdivision thereof, any damages recovered therein shall not exceed the sum of one hundred thousand dollars ($100,000); provided, however, that in all instances in which the state was engaged in a proprietary function in the commission of the tort, or in any situation

In light of certain post-Saunders decisions, the "maintenance" concept may be limited only to context of Saunders, i.e. situations involving prisoner violence as distinguished from situations involving direct liability. In 1988, six years after Saunders, the United States Supreme Court decided West. v. Atkins, 487 U.S. 42 (U.S. 1988). In West, the US Supreme Court recognized that "the provision of medical services is a **function traditionally performed by private individuals**..." (emphasis supplied) West v. Atkins[3], 487 U.S. 42, 57 (U.S. 1988). While recognizing that the nature of the patient **relationship** is changed by the prison context, West does not change the underlying **function** of the services performed. See generally, West v. Atkins, 487 U.S. 42 (U.S. 1988). Therefore, the provision of medical services by the State meets the definition of a proprietary function.

By further recognizing "nonmedical (sic) functions" of prison life that change "the nature, timing, and form of medical care provided to inmates," Id the West court creates a dichotomy that which logically defines "the nature, timing, and form of medical care" as medical functions, hence proprietary functions. Stated another way, by contrasting "the nature, timing, and form of medical care" against "nonmedical functions" this distinction leads to the conclusion, through negative implication, that the "nature, timing, and form of medical care provided to inmates" are **medical functions** since they are not "nonmedical functions".

---

whereby the state has agreed to indemnify the federal government or any agency thereof for any tort liability, the limitation on damages set forth in this section shall not apply." R.I. Gen. Laws § 9-31-2

Contrary to Saunders, and just prior to the 2001 events giving rise to the Plaintiff's complaint, in 1999 our First Circuit Court of Appeals recognized that "[g]overnment customarily involves itself in many types of activities, but few of those activities come within the State's exclusive preserve. To date, the short list of activities that have been held to satisfy this demanding criterion includes 'the administration of elections, the operation of a company town, eminent domain, peremptory challenges in jury selection, and, in at least limited circumstances, the operation of a municipal park...' When a plaintiff ventures outside such narrow confines, she has an uphill climb." (internal citation omitted) Perkins v. Londonderry Basketball Club, 196 F.3d 13, 19 (1st Cir. 1999).

Also contrary to Saunders, in Lawson v. Liburdi (D.R.I. 2000) our Federal District Court recognized that the "Supreme Court expressly stated that 'correctional facilities have never been exclusively public.' (quoting Richardson v. McKnight, 521 U.S. 399 at 405) Lawson v. Liburdi, 114 F. Supp. 2d 31, 40 (D.R.I. 2000). Noting the heavy involvement of private contractors in the prison environment, "in prison management throughout our nation's history, dating back to the 18th century, [Richardson] at 405-406. As a result, the management of prisons cannot be fairly construed as a function that has traditionally been 'an exclusive prerogative of the sovereign.' See Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 160, 98 S. Ct. 1729, 1735, 56 L. Ed. 2d 185 (1978). 'While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.' (quoting Flagg Brothers, Inc., 436 U.S. at 158, 98 S. Ct. at 1734.)". Lawson v. Liburdi, 114 F. Supp. 2d 31, 40 (D.R.I. 2000).

The present interpretation of a "proprietary function" developed since Saunders is found in Morales v. Town of Johnston, 895 A.2d 721, 731 (R.I. 2006). A function is proprietary when "the governmental entity engage[s] in activities normally undertaken by private individuals or corporations" Morales. Thus, whether the State of Rhode Island is triaging medical needs and scheduling medical appointments consistent with those needs in a publicly owned clinic staffed by state employees, or within its correctional facilities, the test is one of whether the function is a proprietary one. In all instances, based upon common experience that all individuals have attending to their own medical needs, the nature, timing, and form of medical care all involve functions normally undertaken by private individuals or corporations in the medical care industry. Based on common sense and experience with our own medical needs, the State was performing a proprietary function. Based on common sense, that proprietary function is necessarily modified based upon the context in which the care is provided. Thus, whether provided in a walk-in clinic, or a private medical office, or within the correctional facility, it is still a proprietary function.

**Conclusion:**

The proprietary function test is not based on whether a government entity is performing the services versus a private individual or corporation, otherwise all private function performed by the state would be change the function of the activity by virtue of the identity of the actor and would nullify the proprietary function test. It is common knowledge that the manner in which functions are performed by the State of Rhode Island, through its employees, are restricted and/or regulated to a greater extent than if the same functions were performed by private individuals or corporations.

In the case at bar, the Plaintiff sustained permanent blindness as a result of the negligent nature, timing, and/or form of the medical care provided to the Plaintiff (see generally, Exhibit A and Exhibit B) by the Defendant. Specifically, Mr. Moreau's initial medical request slip seeking vision specific medical care was disregarded and/or destroyed; The subsequent medical care he did receive came only after he wrote a letter to Joseph Marocco on September 17, 2001 asking for an appointment with the eye doctor; The medical care received after that letter was not with the eye doctor, but with a nurse; After the nurse confirmed the need for a visit with the eye doctor, the Plaintiff was not examined by the eye doctor for over 33 days. Thus, the Plaintiff criticizes the nature, timing, and form of the medical care he received.

For the above reasons, the tort cap does not apply to this case since it pertains to medical services, i.e., the nature, timing, and form of medical care provided to the Plaintiff, which are proprietary functions.

Plaintiff,
By Counsel,

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio, Esq.
Attorney #3910
McKinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655

## CERTIFICATION

I, the undersigned, do hereby certify that on Monday, February 26, 2007, I caused a copy of the within to be served upon **Thomas A. Palombo Esq.**, by electronic means only to "tpalombo@riag.ri.gov".

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio