**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**RICHARD MOREAU**
**PLAINTIFF**

**V.** **C.A. NO. 04-459 S**

**STATE OF RHODE ISLAND**
**DEFENDANT**

**OBJECTION AND RESPONSE TO MOTION IN LIMINE**

Now comes Defendant, State of Rhode Island, and hereby objects and responds to Plaintiff Moreau's Motion In Limine Regarding the Applicability of the State Tort Cap (R.I.G.L. § 9-31-2). In support hereof, the State submits the accompanying Memorandum of Law.

WHEREFORE, Defendant State respectfully request that the Honorable Court issue pretrial rulings that the State was not "engaged in a proprietary function in the commission of the [alleged] tort" (R.I. Gen. Laws § 9-31-2) and that the $100,000.00 limitation of tort damages (R.I. Gen. Laws § 9-31-3) applies in this civil action.

Respectfully submitted,

DEFENDANTS
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

*/s/ Thomas A. Palombo*
______________________________
Thomas A. Palombo, Bar No. 4212
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2296
Fax: (401) 222-2995
tpalombo@riag.ri.gov

**CERTIFICATION**

I hereby certify that I mailed a true copy of the foregoing Objection by first class mail, postage prepaid on this 5th day of March, 2007 to:

*/s/ Thomas A. Palombo*

**Joseph-Anthony DiMaio, Esquire**
contact@mckinnonharwood.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**RICHARD MOREAU**
**PLAINTIFF**

**V.** **C.A. NO. 04-459 S**

**STATE OF RHODE ISLAND**
**DEFENDANT**

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION AND RESPONSE TO MOTION IN LIMINE**

**INTRODUCTION**

Defendant, State of Rhode Island, respectfully submits this Memorandum of Law in support of its Objection and Response to Plaintiff Moreau's Motion In Limine Regarding the Applicability of the State Tort Cap (R.I.G.L. § 9-31-2). For the reasons set forth, the State respectfully requests that the Honorable Court issue pretrial rulings that the State was not "engaged in a proprietary function in the commission of the [alleged] tort" (R.I. Gen. Laws § 9-31-2) and that the $100,000.00 limitation of tort damages (R.I. Gen. Laws § 9-31-3) applies in this civil action.

**ISSUE PRESENTED**

Plaintiff's Motion in Limine asks the Court to rule whether the so-called State tort cap, found in R.I. Gen. Laws § 36-9-2, applies in this civil action for negligence against the State.

**ARGUMENT**

"There is no question that the maintenance of a correctional institution is a governmental function" wrote Chief Justice Weisberger in Saunders v. State, 446 A.2d 748, 751 (R.I. 1982). This pronouncement was made in answer to questions certified by

this U. S. District Court.[1] Saunders was a civil rights and wrongful death action filed after an inmate was fatally stabbed by other inmates. Id. at 749. Its full "governmental function" discussion is as follows:

> Section 9-31-2, as amended by P.L.1974, ch. 39, § 1 sets forth a limitation of damages in the sum of $50,000 [now, $100,000] to be awarded against the state of Rhode Island when engaged in its governmental functions. There is no question that maintenance of a correctional institution is a governmental function. Consequently, in the event that a correctional officer employed by the state was guilty of negligence and was not protected by personal immunity, the state would be liable under the doctrine of *respondeat superior* for the negligence of its employee subject to the monetary limitation set forth in § 9-31-2. See Calhoun v. City of Providence, 120 R.I. 619, 390 A.2d 350 (1978). See also Becker v. Beaudoin, 106 R.I. 562, 261 A.2d 896 (1970); Smith v. Raparot, 101 R.I. 565, 225 A.2d 666 (1967); Giroux v. Murphy, 88 R.I. 280, 147 A.2d 465 (1959). Saunders, 446 A.2d 751-52.

Thus, the High Court expressly stated that, in a tort case against the R.I. Department of Corrections, the State tort cap applies. The use and meaning of the word "maintenance" in Saunders is clear and unambiguous. The Chief Justice was talking about the operation and running of the State correctional institution. Clearly, he was not talking about bricks and mortar. Plaintiff's bald assertion, that "the 'maintenance' concept may be limited only to context of Saunders, i.e. situations involving prison violence as distinguished from situations involving direct liability" (Memorandum at 3), has no basis in law or in fact. See Argument, infra.

Accordingly, the R.I. Department of Corrections (DOC), Adult Correctional Institutions, which serves as both the State jail and prison, is a governmental function.

---

[1] Respectfully, were it not for Saunders' clear statement of law in response to the District Court's certified questions, the State would request a certified question in this civil action, since this is a matter of State tort law. If there's any doubt, another question should be certified.

Indeed, in the quarter century since Saunders, no Rhode Island case retreats from this clear pronouncement. Furthermore, medical services for inmates are required by the Federal and State Constitutions and by State law. They are part and parcel of the DOC's governmental function. As argued below, Plaintiff's attempt to somehow excise prison medical services from this function is wholly misplaced.

Cases from other jurisdictions also support the argument that DOC medical services are

a function of State government.

The Eastern District of Kentucky's concise statement fits squarely in this case and bears emphasis: "Plaintiff's reliance on West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), is misplaced because the act of providing medical assistance to incarcerated prisoners has traditionally and exclusively been reserved to the state." Durso v. Kentucky Association of Counties, 32 F.Supp.2d 929, 931, n. 3 (E.D.Ky 1999) (Ruling that Kentucky's self-funded unemployment compensation fund and association were not state actors and could not be held liable under § 1983.)

In Madsen v. State, 583 P.2d 92 (Utah 1978), the court considered plaintiff's argument that the operation of a hospital facility at the State prison was a proprietary and not a governmental function. The court held that the prison hospital was a governmental function:

> The Utah Governmental Immunity Act waives immunity for injuries resulting from the exercise of a governmental function *** [W]e [have] recognized that the proprietary functions of governmental entities are not within the coverage of the Act. In that case this Court listed the pertinent factors to be considered in determining whether an activity is proprietary or governmental:

> A primary one is whether the activity is something which is done for the general public good and which is generally regarded as a public responsibility. Coupled with this, other matters considered are whether there is any special pecuniary benefit to the City; and also, whether it is of such a nature as to be in competition with free enterprise. ***

> Considering these factors, the operation of a hospital at the prison facility must be regarded as a governmental function. The State has a responsibility to provide medical care for its prisoners, and in fulfillment of that duty it may operate a hospital at the prison facilities. No pecuniary benefit flows from such an activity; neither does the hospital compete for patients with other hospitals. Finally, since the operation of a state prison is in the public interest, activities which improve the quality of our prison system must also be in furtherance of the public good. The operation of a prison hospital is clearly such a program. Madsen, 583 P.2d at 93 (Citations and footnotes omitted.) (Emphasis added.)[2]

See also these supporting cases, emphasized in pertinent part: Schmidt v. Adams, 211 Ga.App. 156, 157, 438 S.E.2d 659, 660 (Ga.App.1993) ("[A]s a salaried employee of the DeKalb County Sheriff's Department, employed at the county jail, [the] primary concern and duty [of the physician's assistant] is the governmental function of caring for persons confined in the jail."); Mt. Carmel Medical Center v. Bd. Of County Commissioners, 1 Kan. App.2d 374, 377, 566 P.2d 384, 387 (1977) ("Kansas has long held that the maintenance and operation of law enforcement departments and jails are governmental functions as distinguished from proprietary.")

---

[2] To counter Plaintiff Moreau's argument that Madsen is pre-West v. Atkins, it bears mention that Madsen was cited by the Utah's high court in a prison immunity case in 1996. See Tiede v. State, 915 P.2d 500, 502, n.2 (Utah 1996). See also Ross v. Schackel, 920 P.2d 1159, 1165 (Utah 1996) ("Prison doctors would seem to be especially entitled to immunity given that their official duties are integral to the performance of a uniquely governmental function.")

Turning to Plaintiff Moreau's argument that the DOC's medical services are a non-governmental, proprietary function, he is just plain wrong to rely on West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250 (1988), as the centerpiece of his argument. There, the Court held that a private physician, who was under contract with the state to provide medical services at the state prison hospital, acted under color of state law within the meaning of 42 U.S.C. § 1983. West ruled that "the physician's function while working for the State…determines whether he is acting under color of state law." 487 U.S. at 56, 108 S.Ct. at 2259.

Plaintiff's Memorandum at 3 quotes West for the proposition that "the provision of medical services is a function traditionally performed by private individuals." However, the quote is taken out of context and the full discussion is as follows:

> Contrary to respondent's intimations, the fact that a state employee's role parallels one in the private sector is not, by itself, reason to conclude that the former is not acting under color of state law in performing his duties. "If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity...." *** Griffin v. Maryland, 378 U.S. 130, 135, 84 S.Ct. 1770, 1773, 12 L.Ed.2d 754 (1964). Moreover, although the provision of medical services is a function traditionally performed by private individuals, the context in which respondent performs these services for the State (quite apart from the source of remuneration) distinguishes the relationship between respondent and West from the ordinary physician-patient relationship. *** Respondent carried out his duties at the state prison within the prison hospital. That correctional setting, specifically designed to be removed from the community, inevitably affects the exercise of professional judgment. Unlike the situation confronting free patients, the nonmedical functions of prison life inevitably influence the nature, timing, and form of medical care provided to inmates such as West.

West, 487 U.S. at 57 n. 15, 108 S.Ct at 2260, n. 15.

Thus, the High Court's reasoning demonstrates what is abundantly clear - prison medical services are quite different from medical services in the community. West is actually contrary to Plaintiff's argument and supports the Defendant State. North Carolina's prison medical services were recognized as state action and a governmental function. Indeed, the medical services of Dr. Atkins, a private physician's in North Carolina's prison hospital, were deemed to be state action. Likewise, the DOC's medical services are State action and a governmental function. Simply stated, West does not and cannot support Plaintiff's argument that the DOC's medical services are non-governmental and proprietary.

Plaintiff Moreau's reliance on the additional cases cited is also misplaced. In Perkins v. Londonderry Basketball Club, 196 F.3d 13 (1st Cir. 1999), after an extensive and scholarly analysis, our Circuit held that a private, youth basketball club was not state action or a public function. Again, Plaintiff would stand the law on its head; urging that Perkins is contrary to Saunders and applies here. Clearly though, Judge Selya (writing for the Court) would never expect the case to support Plaintiff's proposition that State prison medical services are non-governmental and proprietary.

Likewise, in Lawson v. Liburdi, 114 F.Supp.2d 41 (D.R.I. 2000), Magistrate Judge Hagopian issues a Report and Recommendation that employees of Cornell Corrections working at the Wyatt Detention Center were not state actors and could not be held liable under 42 U.S.C. § 1983. True, the ruling does say that "operating a prison has never been the exclusive prerogative of the state… ." 114 F.Supp.3d at 40. Nonetheless, this is written in the context of alleged state action by private persons; not, as here,

governmental function by the sovereign. In Rhode Island, "[t]here is no question that the maintenance of a correctional institution is a governmental function," Saunders, 446 A.2d at 751, and has never been a proprietary function.

Finally, Xavier v. Cianci, 479 A.2d 1179, 1182 (R.I. 1984), a union challenge to the city's contract with a private street sweeper and trash collector, held that the "public duty to clean city streets does not, however, rise to the level of a governmental function." This is markedly different from the DOC's medical services for inmate, which are mandated by the Federal and State Constitutions and by State law.

The State strongly disagrees with Plaintiff Moreau's argument that "whether provided in a walk-in clinic, or a private medical office, or within the correctional facility, [medical services] is still a proprietary function." Plaintiff's Memorandum at 5. This argument is without citation. None of the cases cited by Plaintiff holds that state prison medical services are proprietary. Moreover, in conclusion, extensive research reveals no case, federal or state, holding that state prison medical services are non-governmental and proprietary. Indeed, as fully set forth above, the opposite is true.

## CONCLUSION

For the reasons set forth, Defendant, State of Rhode Island, respectfully requests that the Honorable Court issue pretrial rulings that the State was not "engaged in a proprietary function in the commission of the [alleged] tort" (R.I. Gen. Laws § 9-31-2) and that the $100,000.00 limitation of tort damages (R.I. Gen. Laws § 9-31-3) applies in this civil action.

Respectfully submitted,

DEFENDANTS
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

*/s/ Thomas A. Palombo*

______________________________
Thomas A. Palombo, Bar No. 4212
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2296
Fax: (401) 222-2995
tpalombo@riag.ri.gov

**CERTIFICATION**

I hereby certify that I mailed a true copy of the foregoing Memorandum by first class mail, postage prepaid on this 5th day of March, 2007 to:

*/s/ Thomas A. Palombo*

**Joseph-Anthony DiMaio, Esquire**
contact@mckinnonharwood.com